[No. S037757. Dec. 30, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
CLIFFORD ALBERT SCOTT, Defendant and Appellant.

COUNSEL

Ellen D. Geis and Paul Bell, under appointments by the Supreme Court, for Defendant and Appellant.

Bradley A. Bristow as Amicus Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, M. Howard Wayne, Keith I. Motley and Niki Cox Shaffer, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BAXTER, J.**—Defendant, an ex-felon, repeatedly molested his girlfriend's 11-year-old daughter. The evidence revealed that he had sexual intercourse with the girl during each unlawful encounter. On some of these occasions, he also either orally copulated or sexually fondled the victim. Defendant was convicted under the lewd conduct statute for each act of sexual intercourse, oral copulation, and fondling charged and disclosed at trial. (Pen. Code, § 288.)[1]

The case raises both guilt and sentencing issues. First, we conclude the Court of Appeal erred in striking the lewd conduct convictions based on the acts of fondling. Unlike the court below, we reject defendant's broad suggestion that fondling activities are necessarily "indivisible" from other sex crimes committed on the same occasion and that the number of convictions is limited to the number of nonfondling crimes. Consistent with the general principles set forth in *People* v. *Harrison* (1989) 48 Cal.3d 321 [256 Cal.Rptr. 401, 768 P.2d 1078] (*Harrison*), each distinct lewd act can result in a separate violation of section 288.

Second, we address a sentencing issue that can arise in any felony case. In *People* v. *Welch* (1993) 5 Cal.4th 228 [19 Cal.Rptr.2d 520, 851 P.2d 802] (*Welch*), we held that sentencing claims are not exempted per se from an objection requirement and that defendants' cannot challenge the terms of their probation for the first time on appeal. Here, we apply the same principles to defendants who challenge the statement of reasons given by the trial court in support of its discretionary sentencing choices.

The Court of Appeal reached a similar conclusion and held that defendant had waived such claims by failing to object below. It appears, however, that

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

this view is not widely held and that sentencing hearings are largely conducted under the assumption that such claims can be raised in the first instance on appeal. As a result, the waiver rule adopted herein will be applied prospectively for the benefit of the bench and bar and to avoid unfairness to this defendant.

## I. FACTS

The crimes occurred in late 1990 and early 1991. Defendant, who was then in his mid-30's, lived with his girlfriend, Susan, and her 4 children. Defendant had fathered the two youngest children, both infants. Susan's other children were three-year-old Ebony and eleven-year-old Latoya. Latoya is the victim in this case.

Latoya's mother regularly used crack cocaine. She was incarcerated for four months between June and September 1990. After her release, she continued using drugs and was gone from the apartment several days a week. Defendant took care of the children in Susan's absence.

At trial, Latoya testified that defendant molested her over a seven-month period beginning in July 1990, and continuing through January 1991. Latoya reported 10 sexual encounters during this time—1 per month, plus an additional incident in August, September, and January.

For purposes of this case, it is sufficient to note that Latoya described the circumstances surrounding all of the crimes in fairly detailed terms. She remembered the exact dates of the last three incidents (Christmas Day, New Year's Day, and the night before defendant's arrest on January 23). She identified the room of the house in which the acts occurred (her bedroom, defendant's bedroom, or the kitchen), and sometimes narrowed the location even further (bed or floor). According to Latoya, the molestations generally took place while her siblings slept in another room or when she and defendant were alone in the apartment. She mentioned what she was wearing on some occasions (pajamas or "regular" clothes) and whether she washed herself afterwards.

Latoya also described the various sex acts with particularity. She testified that an act of "sexual intercourse" occurred during each of the 10 episodes. When asked to define the term, she explained that defendant "stuck his private into [her private]." Latoya found "white stuff" on her leg after each penetration.

Latoya indicated that on at least four occasions, the act of intercourse was accompanied by another sex act. Specifically, defendant fondled ("was

feeling on") her in a sexual manner during the first and last encounters (July and January 22).[2] On at least two other occasions (September and October), defendant orally copulated Latoya ("licked" her "private") in addition to having intercourse with her.

Latoya knew defendant had a bad temper and she was afraid of him. She testified that after the third incident (August) and on subsequent occasions, he reportedly threatened to kill her, her mother, and her sister Ebony if the molestations were ever disclosed. Defendant also pulled Latoya's hair and made her cry before ordering her into the bedroom and molesting her for the last time in January.

Latoya's mother called the police when she returned home after the last January incident and found defendant and Latoya sleeping together. When defendant was arrested and placed in the patrol car, a police officer twice heard him mutter, "[A]ll this time and she says something now."

A medical examination performed shortly after defendant's arrest disclosed tenderness in Latoya's vaginal area. Although her hymen was intact, this phenomenon apparently is not unusual in molestation cases or inconsistent with penetration. The examining physician explained that because Latoya's hymen was "estrogenized" and highly elastic, it might never have torn or it could have torn and healed and left no detectable scar.

Defendant testified on his own behalf and denied molesting Latoya. He believed she was retaliating against him because of his strict parenting style and because of the beatings he inflicted upon her mother. Defendant's friends and Susan's brother testified that they saw nothing unusual in defendant's behavior towards Latoya around the time some of the molestations occurred.

---

[2]Latoya described the July incident, in part, as follows: "[Q] What happened when he told you to take off your clothes? [A] He told me to lay down, he took off his clothes and then he got on top of me. [Q] What did he do? [A] He had sexual intercourse. [Q] Can you tell me, Latoya, what that means to you? [A] To have sex. [Q] . . . Did he touch you anywhere on your body that night? [A] Yeah. He was feeling my breasts and my buttocks. [Q] Did he touch you anywhere else? [A] No. [Q] What was he touching your breasts and your buttocks with? [A] With his hands. [Q] And when you say that he had sex with you, what part of his body touched you? [A] His private touched mine."

Latoya described the January 22 incident, in part, as follows: "[Q] What happened, Latoya? [A] He started feeling on me and had sex. [Q] When you say feeling on you, what do you mean by that? [A] Feeling on my body parts. [Q] Can you tell us what parts? [A] My butt and my breasts. [Q] Did he touch you anywhere else? [A] Yeah. My private. [Q] What did he touch your private with? [A] His hands. [Q] Did he touch you with any other part of his body? [A] Only when he had sex with me. [Q] And that was with his private? [A] Yes."

Defendant was charged with 14 counts of lewd conduct, 2 of which were allegedly committed by force or fear. (§ 288, subds. (a), (b).) The information also alleged that defendant occupied a position of special trust while committing most of the crimes. (§ 1203.066, subd. (a)(9).) The jury found defendant guilty as charged, except that only one forcible lewd act (January 22) was found.[3] Defendant admitted that he had sustained separate prior convictions for armed robbery and involuntary manslaughter (§ 667, subd. (a)), and that he had served a prior prison term (§ 667.5, subd. (a)).

At the start of the sentencing hearing in mid-1991, the court announced that it had read the probation report and the parties' statements in aggravation and mitigation. It then solicited argument from counsel. Defense counsel urged the court not to impose either the upper term or consecutive terms on the lewd conduct counts and insisted that a 16-year prison sentence was appropriate. Leniency was urged primarily on the basis of evidentiary and jury trial issues that had been raised and rejected in a prior motion for new trial. The prosecution sought a 50-year term, citing the repeated abuse and emotional trauma Latoya had endured.

The court ultimately imposed a 44-year prison sentence that was similar in all material respects to the sentence recommended by the probation officer. First, defendant was found ineligible for probation based on the use of force in one count and his violation of a position of special trust. In mitigation, the court acknowledged that defendant had performed satisfactorily on parole. It made clear, however, that this factor was entitled to little weight and was "far outweigh[ed]" by the aggravating circumstances.

As noted, defendant was convicted of 14 counts of lewd conduct. The court designated count 1 as the principal term and imposed the upper term of eight years on this count. It cited three aggravating factors in support of this choice (repeated threats of harm, violent conduct posing a serious threat to society, and multiple prior convictions of an increasingly serious nature). As to the remaining convictions (i.e., counts 2 through 14), the court determined that consecutive sentences were warranted, but rejected the prosecutor's suggestion that full consecutive terms be imposed to the extent available under section 667.6, subdivision (c). Instead, a consecutive term equal to one-third of the middle term (i.e., two years) was imposed under section 1170.1, subdivision (a) for each of the lewd conduct convictions in counts 2 through 14. Again, three aggravating factors were cited (independent crimes, separate threats and acts of violence, and crimes committed in different places and at different times).

---

[3]The information and verdict forms identified the crimes according to the month or date on which they occurred and the nature of the underlying lewd act (e.g., "penile/genital contact," "breast/vaginal/buttocks fondling," and "oral/genital contact").

As to enhancements, the court imposed a consecutive five-year term for each of defendant's two prior serious felony convictions. An additional three-year term imposed for the prior prison term was ordered stayed. After reciting its sentence, the court invited comments from counsel. No objections were raised. Defendant appealed the judgment.

On the issue of guilt, the Court of Appeal unanimously agreed with a claim defendant had raised at trial and on appeal—that the manual fondling of Latoya's breasts, vagina, and buttocks in July 1990 and on January 22, 1991, was part of a course of conduct "indivisible" from the sexual intercourse which also occurred on those occasions. The Court of Appeal concluded that all the sexual acts on each of these dates should be treated as a single offense. It therefore struck the convictions that were based on the acts of fondling (counts 2 and 14).

In challenging his sentence on appeal, defendant argued that the trial court erred in sentencing him on some counts under section 654, in double-counting certain aggravating factors, in citing factors that did not apply, and in misweighing the factors. On its own motion, the Court of Appeal asked the parties to address whether defendant had waived any of these claims in light of our recent decision in *Welch, supra*, 5 Cal.4th 228.

A majority of the court ultimately concluded that only the section 654 and "dual-use" claims had not been waived. Although it found a dual-use problem, the majority affirmed the judgment (as modified) on the ground that it was not reasonably likely that a more favorable sentence would have been imposed in the absence of the error. The dissenting justice concluded that no sentencing claims had been waived, that various sentencing errors had been made, and that a remand for resentencing was required.

Defendant petitioned for review on the sentencing/waiver issue. In his answer, the Attorney General raised an additional question concerning reversal of the two fondling counts on appeal. We granted review of both questions.[4]

## II. DISCUSSION

### A. *Lewd Conduct Convictions*

■■■ The Attorney General contends the Court of Appeal erred in striking the convictions that were based on evidence that defendant fondled

---

[4]An amicus curiae brief has been filed on defendant's behalf by the California Public Defenders Association.

Latoya near the time he had sexual intercourse with her in the first and last incidents (counts 2 and 14). We agree.

The Penal Code prohibits and punishes a wide variety of forcible, non-consensual, and otherwise depraved forms of sexual conduct. Many of these crimes have been part of the code since its enactment in 1872 or were added a few years later. Offenses long proscribed by statute include rape (§§ 261, 263), sodomy (§ 286), lewd acts against children (§ 288), and oral copulation (§ 288a). New crimes also have been created. (See, e.g., §§ 243.4 [sexual battery], 288.5 [continuous abuse of child by resident molester], 289 [penetration of genital or anal opening by foreign object].) From time to time, the Legislature has expanded liability under existing statutes. (See, e.g., *Harrison, supra,* 48 Cal.3d 321, 328, fn. 7 [§ 289]; *People* v. *Barnes* (1986) 42 Cal.3d 284, 292-303 [228 Cal.Rptr. 228, 721 P.2d 110] [§ 261].)

Many provisions assume that specific sex acts are venal and harmful when committed against unwilling persons of any age. For example, the rape and sodomy statutes concern nonconsensual acts of vaginal and anal intercourse, and specify that "[a]ny sexual penetration, however slight" is sufficient to "complete" the crime. (§§ 263, 286, subd. (a); see also § 261.) Similar "penetration[s]" of the "genital or anal openings" are prohibited where the act is committed with a "foreign object" or with any part of the body besides a "sexual organ." (§ 289, subds. (a)-(k).) The scheme targets other types of compelled sex acts as well. (See, e.g., §§ 288a, subd. (a) ["copulating the mouth of one person with the sexual organ or anus of another person"], 243.4, [committing battery by "touch[ing]" an "intimate part," to wit, "sexual organ, anus, groin, or buttocks of any person, and the breast of a female"].)

■ As these excerpts suggest, a prolonged encounter is not necessary to convict under the scheme. Assuming other elements of the offense are present, a statutory violation is generally complete as soon as the requisite "penetration," "touching," or contact occurs. We have explained the underlying rationale as follows: "As section 263 notes with regard to the sufficiency of 'penetration' in rape cases, the 'essential guilt' of sex offenses lies in the 'outrage' to the person and feelings of the victim . . . .' The 'slight penetration' language confirms that this peculiar 'outrage' is deemed to occur each time the victim endures a new, unconsented sexual insertion. The Legislature, by devising a distinctly harsh sentencing scheme, has emphasized the seriousness with which society views each separate unconsented sexual act, even when all are committed on a single occasion. (See, e.g., § 667.6, subd. (c).)" (*Harrison, supra,* 48 Cal.3d 321, 330.)

■ Above and beyond the protection afforded to all victims of sexual assault, the Legislature has determined that children are uniquely susceptible

to "outrage" and exploitation. Hence, special laws on the subject of sex with children have been enacted. They expand the kinds of acts which may be deemed criminal sexual misconduct, and they generally operate without regard to force, fear, or consent. (See, e.g., §§ 261.5 [sexual intercourse with nonspouse under 18], 266 [enticing female under 18 into prostitution], 266j [procuring child under 16 for lewd act], 267 [abducting person under 18 for prostitution], 285 [incest], 288.2 [distributing harmful materials to minor for sexual purpose], 288.5 [continuous abuse of child by resident molester].)

Section 288 is a key weapon in this statutory arsenal. As pertinent here, it prohibits "any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of the child . . . ." The statute has remained largely unchanged since its enactment over a century ago.[5]

Courts have long assumed that section 288 protects underage victims from a broad range of sexually motivated acts. In general, a statutory violation is

---

[5]At the time of defendant's crimes, section 288 stated in pertinent part: "(a) Any person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of the child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years. [¶] (b) Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years." We will refer to the statute simply as section 288.

In September 1994, after defendant's crimes, the Legislature made minor changes in section 288 in an apparent effort to modernize sentence structure and tone. (Stats. 1994, ch. 60, § 1.) Thus, it modified prepositions, commas, and verb tense. However, the substantive elements of the crime were not changed.

The only other noteworthy amendment occurred in 1937, when the Legislature modified the first sentence of section 288. Before that time, the statute referred to acts "other than" (as opposed to "including") those made criminal under part 1 of the code. (The sex crime statutes are located in part 1.) We have explained that this early version of the statute proved "vexing" because defendants argued that it *only* applied to such "other" lewd acts, and that proof that the defendant had committed a rape, sodomy or other proscribed sex crime operated as a *defense* to conviction under section 288. (*People* v. *Greer* (1947) 30 Cal.2d 589, 601 [184 P.2d 512].) While section 288 was enacted to prohibit certain "offensive" acts that were not otherwise criminal, there was no indication the Legislature intended to exclude other already-criminal sexual conduct from the statute's reach. (*Greer, supra,* 30 Cal.2d at p. 601.) In 1937, the Legislature clarified its intent in this regard and amended the definition of a lewd act to specifically "includ[e]" acts constituting other sex crimes. (§ 288; *Greer, supra,* 30 Cal.2d at p. 602.) Thus, it has long been settled that commission of a sex act constituting a crime under another section of the code is neither a defense to, nor a requirement of, conviction under section 288.

said to occur when the defendant "touches" a child under the age of 14 with the requisite specific intent. (*People* v. *Raley* (1992) 2 Cal.4th 870, 907 [8 Cal.Rptr.2d 678, 830 P.2d 712]; *People* v. *Mickle* (1991) 54 Cal.3d 140, 175-176 [284 Cal.Rptr. 511, 814 P.2d 290]; *People* v. *O'Connor* (1992) 8 Cal.App.4th 941, 947 [10 Cal.Rptr.2d 530]; *People* v. *Gilbert* (1992) 5 Cal.App.4th 1372, 1380 [7 Cal.Rptr.2d 660]; *People* v. *Austin* (1980) 111 Cal.App.3d 110, 112-115 [168 Cal.Rptr. 401]; *People* v. *Dontanville* (1970) 10 Cal.App.3d 783, 795-796 [89 Cal.Rptr. 172]; *People* v. *Nothnagel* (1960) 187 Cal.App.2d 219, 225 [9 Cal.Rptr. 519]; *People* v. *Hobbs* (1952) 109 Cal.App.2d 189, 192 [240 P.2d 411]; *People* v. *Ahsbahs* (1946) 77 Cal.App.2d 244, 250 [175 P.2d 33]; *People* v. *Schultz* (1942) 49 Cal.App.2d 38, 43-44 [120 P.2d 893]; CALJIC No. 10.41; 2 Witkin & Epstein, Cal. Criminal Law (1988) Crimes Against Decency and Morals, §§ 786-790, pp. 889-894.)

For example, section 288 applies where the victim is raped, sodomized, or orally copulated, and where the defendant attempts to commit such a crime. (See, e.g., *People* v. *Siko* (1988) 45 Cal.3d 820, 823 [248 Cal.Rptr. 110, 755 P.2d 294]; *People* v. *Pilgrim* (1963) 215 Cal.App.2d 374, 376, 379 [30 Cal.Rptr. 170]; *People* v. *Ash* (1945) 70 Cal.App.2d 583, 584 [161 P.2d 415].) A lewd and lascivious act also has been found where the child is directed to perform a sexual act upon the defendant (see, e.g., *People* v. *Catelli* (1991) 227 Cal.App.3d 1434, 1447-1448 [278 Cal.Rptr. 452]; *People* v. *Pitmon* (1985) 170 Cal.App.3d 38, 44-45 [216 Cal.Rptr. 221]), and where the defendant fondles the victim's "private parts" (see, e.g., *People* v. *Shultz, supra,* 49 Cal.App.2d 38, 41, 43-44; *People* v. *Epperson* (1935) 7 Cal.App.2d 125, 126 [45 P.2d 359]).

Some cases suggest that no contact with the bare skin, genitals, or breasts is required under section 288. (See, e.g., *People* v. *Gilbert, supra,* 5 Cal.App.4th 1372, 1380; *People* v. *Dontanville, supra,* 10 Cal.App.3d 783, 795-796; *People* v. *Hobbs, supra,* 109 Cal.App.2d 189, 192; *People* v. *Lanham* (1934) 137 Cal.App. 737, 740 [31 P.2d 410].) Other cases hold that even a "constructive" touching may suffice. This principle permits conviction under section 288 where, at the defendant's direction and for a lewd purpose, a young child touched himself or touched a third person. (See, e.g., *People* v. *Mickle, supra,* 54 Cal.3d 140, 176; *People* v. *Wallace* (1992) 11 Cal.App.4th 568, 574-575 [14 Cal.Rptr.2d 67]; *People* v. *Meacham* (1984) 152 Cal.App.3d 142, 154 [199 Cal.Rptr. 586]; *People* v. *Austin, supra,* 111 Cal.App.3d 110, 114-115.)

Application of section 288 to a wide variety of sexually motivated acts promotes the statutory purpose in several ways. Where the defendant commits an act under circumstances that are prohibited by both section 288 and

another sex crime statute, a violation under either or both statutes may be charged and found.[6] As a result, the statute provides the prosecution with broad discretion to tailor the charges to the evidence in a particular case—an important concern where young victims might not remember or be able to describe the precise manner in which they were assaulted. Section 288 also permits the conviction of an individual who touches a child in a lewd and harmful way, even though there is no evidence that a sex crime occurred under any other statutory provision.[7]

 The parties do not seriously dispute that, viewed independently, each act of sexual fondling and intercourse committed in the first and last incidents violated section 288. However, in defending the court's decision striking the two fondling counts on appeal, defendant argues that special rules apply where multiple lewd acts occur on a single occasion. Defendant suggests that all such activities are merely part of an "indivisible" sexual

---

[6]A defendant who sexually assaults a child under age 14 can be convicted under section 288 and another applicable statute for the same criminal act. However, he cannot be separately punished for each such offense. (*People* v. *Siko, supra,* 45 Cal.3d 820, 823-824; *People* v. *Pearson* (1986) 42 Cal.3d 351, 358-360 [228 Cal.Rptr. 509, 721 P.2d 595].) This rule derives from section 654, which literally prohibits multiple punishment for multiple convictions based on the "same act or omission." However, section 654 also applies to multiple convictions arising out of an "indivisible" course of conduct committed pursuant to a single criminal intent or objective. (*People* v. *Latimer* (1993) 5 Cal.4th 1203, 1207-1209 [23 Cal.Rptr.2d 144, 858 P.2d 611], citing *Neal* v. *State of California* (1960) 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839].) As we will explain later in the text, multiple sex acts committed on a single occasion can result in multiple statutory violations. Such offenses are generally "divisible" from one another under section 654, and separate punishment is usually allowed. (See, e.g., *People* v. *Hicks* (1993) 6 Cal.4th 784, 788 & fn. 4 [25 Cal.Rptr.2d 469, 863 P.2d 714]; *Harrison, supra,* 48 Cal.3d 321, 335-338; *People* v. *Perez* (1979) 23 Cal.3d 545, 552-554 [153 Cal.Rptr. 40, 591 P.2d 63]; *People* v. *Hicks* (1965) 63 Cal.2d 764, 766 [48 Cal.Rptr. 139, 408 P.2d 747].)

[7]We recognize that a few cases have rejected the notion that "any" touching of an underage child with the requisite intent violates section 288. These cases define the requisite act in somewhat narrower terms as follows: "[A]ny touching of the body of a child which to an objectively reasonable person is sexually indecent or tends to arouse sexual desire." (*People* v. *Wallace, supra,* 11 Cal.App.4th 568, 579 (*Wallace*), italics omitted; in accord, *People* v. *Self* (1993) 12 Cal.App.4th 1222, 1226 [16 Cal.Rptr.2d 67]; *People* v. *Gaglione* (1994) 26 Cal.App.4th 1291, 1297-1298 [32 Cal.Rptr.2d 169].)

On the one hand, this language correctly implies that the less overtly sexual the act, the more likely the inference that it was not intended to arouse either party. The cases have always assumed that the trier of fact looks to all the circumstances, including the charged act, to determine whether it was performed with the required specific intent. (See, e.g., *People* v. *Owen* (1945) 68 Cal.App.2d 617, 619 [157 P.2d 432].) On the other hand, by requiring an act which is patently "sexual" in nature as well as intent, the *Wallace* line of cases has created uncertainty as to the precise definition of a "lewd or lascivious act" under section 288. (See CALJIC No. 10.41 (1993 rev.) and attached comments.) However, we need not and do not resolve the issue here. All of the convictions in this case were based on acts that were clearly "lewd" under any reasonable or existing construction of the statutory language.

assault and that the statutory scheme does not permit separate conviction for each distinct act. We disagree.

The proposed rule is inconsistent with the general manner in which statutory violations are calculated under the scheme. The relevant analysis appears in *Harrison, supra,* 48 Cal.3d 321. There, the victim awoke early one morning and discovered the defendant breaking into her bedroom. The pair struggled and defendant made statements suggesting that he intended to rape the victim. He inserted his finger into her vagina three separate times, but it repeatedly dislodged when she pulled away. The brief attack ended when the victim escaped after the last penetration. On appeal, the defendant argued that an "indivisible" course of conduct had occurred, and that the jury had erred in finding three violations of section 289 (penetration by foreign object).

We rejected the claim. *Harrison* reviewed the circumstances under which a sexual offense is deemed "complete," and noted that "prolonged or deep insertion, or emission or orgasm" had never been required in "penetration" cases. (*Harrison, supra,* 48 Cal.3d 321, 329].) We also observed that courts had long assumed that one offense is complete and another one begins whenever the perpetrator stops and resumes unlawful activity during a sexual assault. Thus, in the vast majority of cases, multiple convictions had been sustained without regard to the sequence or nature of the underlying acts or the cause or length of any break between them. (*Id.,* at pp. 330-331.) *Harrison* emphasized that the Legislature had amended the scheme several times without expressing any "discernible objection" to the manner in which it had been applied. (*Id.,* at p. 334.) Thus, despite the close and similar nature of the underlying acts, we held that the defendant had properly sustained three convictions under section 289 for each "new and separate" penetration of the victim. (48 Cal.3d at p. 329, italics omitted.)

*Harrison* also suggested that a contrary rule would defeat the statutory purpose and lead to absurd results. For example, defendant Harrison sought to minimize his culpability by arguing that fewer penetrations and less violence might have occurred if the victim had not resisted the attack. We made clear, however, that such factors had no bearing on whether the elements of three separate crimes were present. Under *Harrison* and the cases on which it relied, a defendant who continues a sexual assault after even a brief interruption risks greater liability under the scheme. (*Harrison, supra,* 48 Cal.3d 321, 329-332.) The Legislature could reasonably conclude that such an offender subjects the victim to an increased risk of harm and is more culpable than one who takes advantage of an opportunity to end the attack. A rule preventing multiple convictions in such cases might hinder

deterrence and effectively reward the offender who repeatedly assaults his victim.[8]

Finally, *Harrison* disapproved a small minority of cases that essentially rewrote the statutory scheme. Most notable was *People* v. *Hammon* (1987) 191 Cal.App.3d 1084 [236 Cal.Rptr. 822] (*Hammon*). There, the defendant was convicted in a nonjury trial of several counts of lewd conduct based on photographs in which he appeared to be performing repeated acts of oral copulation, sexual intercourse, and genital fondling upon a female infant. Although the defendant raised only sentencing issues on appeal, the *Hammon* court analyzed the propriety of his numerous convictions. It reversed some of the lewd conduct counts because it found no evidence that certain events had transpired between similar sex acts, to wit, the commission of a "different sex offense," "sexual climax," an "appreciable passage of time," or a "reasonable opportunity for reflection." (*Id.*, at p. 1099, fn. omitted.) *Hammon* broadly held that distinct but similar sex acts constitute distinct crimes only where such an intervening circumstance appears. (*Ibid.*)

*Harrison, supra*, 48 Cal.3d 321, 332-333, concluded that the *Hammon* test improperly restricted the circumstances under which a completed sex offense could be found. We noted that the four factors cited by *Hammon* essentially collapsed into one—whether the defendant had a reasonable opportunity to reflect between acts. However, the *Hammon* court had "borrowed" this language from section 667.6, subdivision (d)—a *sentencing* statute mandating full consecutive terms where the defendant has "a reasonable opportunity to reflect upon his or her actions and nevertheless resume[s] sexually assaultive behavior." We observed that "[n]othing on the face of [section 667.6] purports to affect the manner in which various sex crimes are to be defined in the first instance. [¶] . . . [Moreover,] the fact that only *some* multiple sex offenders *must* receive consecutive terms on the basis of a 'reasonable opportunity for reflection' test suggests that *others* may at least be *convicted* of multiple sex offenses even in the *absence* of this factor." (48 Cal.3d 321, 333, italics in original.) *Harrison* made clear that while a jury might infer that a "new and separate" sexual act had occurred under the circumstances identified by *Hammon*, the law did not preclude separate convictions in the absence of such evidence. *Hammon* was therefore disapproved.

For similar reasons, we reject defendant's proposed limit on the number of convictions that can arise during a single encounter under section 288. Each

---

[8]For similar reasons, we rejected the defendant's claim that the trial court had erred in not staying separate punishment for the sex offenses under section 654. (*Harrison, supra*, 48 Cal.3d 321, 336-338; see also *People* v. *Perez, supra*, 23 Cal.3d 545, 552-553.)

individual act that meets the requirements of section 288 can result in a "new and separate" statutory violation. (*Harrison, supra,* 48 Cal.3d 321, 329, italics omitted.) As some courts already recognize, a more lenient rule of conviction should not apply simply because more than one lewd act occurs on a single occasion. (See, e.g., *People* v. *Bright* (1991) 227 Cal.App.3d 105, 109-110 [277 Cal.Rptr. 612].) Under defendant's approach, the clever molester could violate his victim in numerous lewd ways, safe in the knowledge that he could not be convicted and punished for every act. In light of the special protection afforded underage victims, we cannot conceive that the Legislature intended this result.

Defendant insists that because of the unique and "amorphous" nature of section 288, the principles set forth in *Harrison, supra,* 48 Cal.3d 321, do not apply. Defendant observes, for example, that a man who rapes a child will likely touch the victim many times before and during the rape, and that none of these activities are "separate" from the rape. Defendant relies heavily on two lower court cases indicating that only a single statutory violation occurs where distinct fondling activities are accompanied by another sex crime such as rape, sodomy, or oral copulation. (*People* v. *Bevan* (1989) 208 Cal.App.3d 393, 399-403 [256 Cal.Rptr. 233] (*Bevan*); *People* v. *Bothuel* (1988) 205 Cal.App.3d 581, 589-592 [252 Cal.Rptr. 596] (*Bothuel*).)

However *Bevan* and *Bothuel* were both decided before *Harrison, supra,* 48 Cal.3d 321, and their reasoning is flawed. The lead case, *Bothuel,* assumed that sex offenses are generally not defined along the lines of each distinct sexual act. (*Bothuel, supra,* 205 Cal.App.3d 581, 591-592 & fn. 11.) It extracted this principle from *Hammon, supra,* 191 Cal.App.3d 1084, a case we have since disapproved.

*Bothuel, supra,* 205 Cal.App.3d 581, 591-592, also disallowed separate convictions for distinct fondling activities based on the assumption that they are generally "incidental" and "preparatory to" other sex crimes committed on the same occasion. (See *Bevan, supra,* 208 Cal.App.3d 393, 401-403.) However, this notion was extracted from older cases which addressed the separate problem of multiple *punishment* under section 654, and which are outdated even in that context.[9] Thus, *Bevan* and *Bothuel* do not properly analyze the circumstances under which a defendant may be separately

[9]In allowing only a single offense to be found despite evidence of multiple lewd acts, the *Bothuel* court relied on several cases, including *People* v. *Greer, supra,* 30 Cal.2d 589, 604; *People* v. *Cline* (1969) 2 Cal.App.3d 989, 995-997 [83 Cal.Rptr. 246]; and *People* v. *Ross* (1965) 234 Cal.App.2d 758, 766 [44 Cal.Rptr. 722]. However, contrary to the approach followed in these older cases, courts no longer assume that fondling offenses are "incidental" to other sex crimes within the meaning of section 654, or that they are exempt from separate punishment. The newer cases tend to focus on evidence showing that the defendant

convicted under section 288 for separate lewd acts committed in a single encounter. They are disapproved to this extent.[10]

Here, substantial evidence supports all of the lewd conduct convictions, including the two fondling counts disputed on appeal. Latoya testified that during both the first and last incidents charged in the information, defendant fondled an intimate part of her body and also had sexual intercourse with her. Even in the absence of testimony describing the precise sequence of the various acts, the jury could reasonably conclude that a total of four lewd acts and four violations of section 288 had occurred on these occasions. The Court of Appeal therefore erred in reversing two of these convictions.

## B. *Sentencing*

 Defendant contends the Court of Appeal erred in holding that defects in the trial court's statement of reasons are waived unless challenged at the time of sentencing. We disagree. Application of an objection and waiver rule is fair and reasonable given the nature of the sentencing decisions at issue and the procedural backdrop against which they are made. To reach that conclusion, we must first examine the statutory scheme in some detail.

---

independently sought sexual gratification each time he committed an unlawful act. (See *People* v. *Madera* (1991) 231 Cal.App.3d 845, 855 [282 Cal.Rptr. 674]; *People* v. *Bright, supra*, 227 Cal.App.3d 105, 110; *People* v. *Blevins* (1984) 158 Cal.App.3d 64, 71-72 [204 Cal.Rptr. 124]; but see *People* v. *Kirk* (1990) 217 Cal.App.3d 1488, 1493-1496 [267 Cal.Rptr. 126].) And, to the extent the older cases remedied a section 654 *sentencing* problem by setting aside the "duplicative" *conviction*, that practice has been disavowed. (*People* v. *Pearson, supra*, 42 Cal.3d 351, 359-361.)

[10]Our analysis above disposes of defendant's related suggestion that when multiple lewd acts occur on a single occasion, the number of convictions is limited to the number of acts which are specifically "defined" as criminal under sex crimes statutes other than section 288. Defendant characterizes fondling as "undefined" conduct prohibited only under section 288, and claims it is not separately convictable where it is accompanied by another "defined" crime. This approach was adopted by the instant Court of Appeal panel both here and in *Bothuel, supra*, 205 Cal.App.3d 581, 591. It also was followed in *Bevan, supra*, 208 Cal.App.3d 393, 400-403.

As far as we can discern, a passing reference to "undefined" lewd touchings was first made in *Hammon, supra*, 191 Cal.App.3d 1084, 1091. The courts in *Bevan* and *Bothuel* seized upon the reference and distinguished between "defined" and "undefined" acts as a means of calculating the number of convictable molestation offenses. However, this approach is arbitrary and inconsistent with the statutory scheme. As noted earlier in the text, a separate violation of section 288 can be based on each distinct lewd act committed against the victim on the same occasion. Moreover, the assumption that all fondling acts are statutorily "undefined" is mistaken. Here, for example, defendant was convicted in counts 2 and 14 based on evidence that he touched Latoya's breasts, buttocks, and vagina with his hands. Fondling of these particular body parts certainly constitutes lewd touching under section 288, but it also is "defined" as criminal in the sexual battery statute. (§ 243.4.) Thus, even under the analysis defendant urges us to adopt, each of his crimes against Latoya was "defined" and could form the basis of a separate conviction under section 288.

The Determinate Sentencing Act has been in effect since 1977 and prescribes the punishment to be imposed in most noncapital felony cases. (§ 1170 et seq.; cf. § 1168, subd. (b) [indeterminate terms].) Although the scheme is vast, intricate, and frequently amended, its basic parameters have become familiar to courts and counsel over the years.

In general, a defendant may be eligible for probation instead of imprisonment depending upon the nature of the offense. (§§ 1170, subd. (a)(2), 1203.) Where imprisonment is imposed, the court typically selects a lower, middle, or upper term as the base term for the underlying offense. (§ 1170, subds. (a)(2), (b).) An enhancement may be authorized or required depending on the circumstances of the crime (see, e.g., § 12022.5 [personal use of a firearm]) and/or the history of the defendant (see, e.g., § 667 [habitual serious felony offender]). In cases involving multiple convictions, terms of imprisonment either can or must be made consecutive; in some cases, alternative formulas for consecutive sentences may be available. (Compare § 1170.1, subd. (a) [one-third the midterm for each consecutive term] with § 667.6, subds. (c) & (d) [full discretionary and mandatory consecutive terms for sex offenses]; but see § 654 [ban on multiple punishment].) Limits on the length of enhanced and aggregate prison terms sometimes apply. (See § 1170.1, subds. (a), (e) & (g)(1).) Various "credits" can reduce a defendant's actual time in custody (see, e.g., § 2900.5, subd. (a) [presentence custody credits]), and monetary penalties can be imposed (see, e.g., § 1202.4 [restitution fine]).

Although many of the act's provisions are mandatory, the trial court often has broad discretion to tailor the sentence to the particular case. The choices available commonly include the decision to order probation rather than imprisonment, to impose the lower or upper term instead of the middle term of imprisonment, to impose consecutive rather than concurrent sentences under certain discretionary provisions, and to strike or stay certain enhancements or waive a restitution fine. (§ 1170.3.) As directed by the Legislature, the Judicial Council has promulgated rules to guide these choices. (§§ 1170, subd. (a)(2), 1170.3; Cal. Rules of Court, rules 401, 403, 406(b) [hereafter rules]; *People* v. *Wright* (1982) 30 Cal.3d 705, 709-713 [180 Cal.Rptr. 196, 639 P.2d 267].)

The statutes and sentencing rules generally require the court to state "reasons" for its discretionary choices on the record at the time of sentencing. (§§ 1170, subds. (b) & (c), 1170.1, subd. (h), 1202.4, subd. (a).) Such reasons must be supported by a preponderance of the evidence in the record and must "reasonably relat[e]" to the particular sentencing determination.

(Rules 408(a), 420(b).)[11] No particular wording is required, but courts typically rely on applicable sentencing factors set forth in the statutory scheme and the rules. (See, e.g., §§ 1170.7-1170.85 [circumstances in aggravation]; rules 414 [criteria affecting probation], 421 [circumstances in aggravation], 423 [circumstances in mitigation], 425 [criteria affecting concurrent or consecutive sentences].)

Although a single factor may be relevant to more than one sentencing choice, such dual or overlapping use is prohibited to some extent. For example, the court generally cannot use a single fact both to aggravate the base term and to impose an enhancement, nor may it use a fact constituting an element of the offense either to aggravate or to enhance a sentence. (§ 1170, subd. (b); rule 420(c) & (d).)[12] In addition, the court may impose the upper or lower term of imprisonment only where the balance of aggravating or mitigating factors cited in support of that choice "weighs" against imposition of the middle term. (Rule 420(a) & (b).)[13]

The parties have ample opportunity to influence the court's sentencing choices under the determinate scheme. As a practical matter, both sides often know before the hearing what sentence is likely to be imposed and the reasons therefor. Such information is contained in the probation report, which is required in every felony case and generally provided to the court

---

[11]The record at sentencing broadly includes "the case record, the probation officer's report, other reports and statements properly received, statements in aggravation or mitigation, and any further evidence introduced at the sentencing hearing." (Rule 420(b); see also § 1170, subd. (b).) We discuss these "reports," "statements," and "evidence" later in the text.

[12]The statutes and rules impose few explicit bans on the dual use of sentencing factors. For purposes of this case, it is clear that the court cannot rely on the same fact to impose both the upper term and a consecutive sentence. (§ 1170, subd. (b); rule 420(c) & (d); Advisory Com. Comment, rule 420; *People* v. *Coleman* (1989) 48 Cal.3d 112, 163 [255 Cal.Rptr. 813, 768 P.2d 32]; *People* v. *Reeder* (1984) 152 Cal.App.3d 900, 919 [200 Cal.Rptr. 479].) However, one relevant and sustainable fact may explain a series of consecutive sentences. (*People* v. *Coulter* (1989) 209 Cal.App.3d 506, 516 [257 Cal.Rptr. 391]; *People* v. *Huber* (1986) 181 Cal.App.3d 601, 628 [227 Cal.Rptr. 113]; see *People* v. *Belmontes* (1983) 34 Cal.3d 335, 347-348 [193 Cal.Rptr. 882, 667 P.2d 686].) It also appears that the same fact may be used both to deny probation and to impose the upper term. (Advisory Com. Comment, rule 420; *People* v. *Bowen* (1992) 11 Cal.App.4th 102, 106 [14 Cal.Rptr.2d 40]; *People* v. *Burg* (1981) 120 Cal.App.3d 304, 306 [174 Cal.Rptr. 491].)

[13]The trial court is authorized to impose a lower, middle, or upper term not only when it sentences on an underlying substantive offense but also when it imposes certain enhancements. (See, e.g., §§ 12022.2-12022.5 [weapon enhancements].) In both situations, departure from the middle term constitutes a sentencing choice for which a statement of reasons is required. (Rule 406(b).) As currently written, the rules provide separate guidelines for each of these term-choice categories—underlying offense and enhancements. (Compare rules 421, 423 [circumstances in aggravation and mitigation of base term] with rule 428 [criteria affecting imposition of enhancements].) However, rule 428(b) was recently invalidated to the extent it purports to limit the circumstances under which the upper term for an enhancement may be imposed. (*People* v. *Hall* (1994) 8 Cal.4th 950 [35 Cal.Rptr.2d 432, 883 P.2d 974].)

and parties before sentencing. (§§ 1191, 1203, subds. (b) & (g), 1203c, 1203d, 1203.10; rules 411, 411.5(a)(8), (9); *People* v. *Edwards* (1976) 18 Cal.3d 796, 801 & fn. 8 [135 Cal.Rptr. 411, 557 P.2d 995].) In anticipation of the hearing, the defense may file, among other things, a statement in mitigation urging specific sentencing choices and challenging the information and recommendations contained in the probation report. (§ 1170, subd. (b); rule 437.) Relevant argument and evidence also may be presented at sentencing. (§ 1204; rule 433.) Under existing law, a defense attorney who fails to adequately understand the available sentencing alternatives, promote their proper application, or pursue the most advantageous disposition for his client may be found incompetent. (See, e.g., *People* v. *Cotton* (1991) 230 Cal.App.3d 1072, 1085-1087 [284 Cal.Rptr. 757]; *People* v. *Cropper* (1979) 89 Cal.App.3d 716, 719-721 [152 Cal.Rptr. 555].)

▪ Against this backdrop, the purpose for requiring the court to orally announce its reasons at sentencing is clear. The requirement encourages the careful exercise of discretion and decreases the risk of error. In the event ambiguities, errors, or omissions appear in the court's reasoning, the parties can seek an immediate clarification or change. The statement of reasons also supplies the reviewing court with information needed to assess the merits of any sentencing claim and the prejudicial effect of any error. (*People* v. *Martin* (1986) 42 Cal.3d 437, 449 [229 Cal.Rptr. 131, 722 P.2d 905]; *People* v. *Edwards, supra,* 18 Cal.3d 796, 804.)

▪ Defendant acknowledges that the right to challenge a criminal sentence on appeal is not unrestricted. In order to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims, reviewing courts have *required* parties to raise certain issues at the time of sentencing. In such cases, lack of a timely and meaningful objection forfeits or waives the claim. (*Welch, supra,* 5 Cal.4th 228, 234-235; *People* v. *Walker* (1991) 54 Cal.3d 1013, 1023 [1 Cal.Rptr.2d 902, 819 P.2d 861]; see also *People* v. *Saunders* (1993) 5 Cal.4th 580, 589-590 [20 Cal.Rptr.2d 638, 853 P.2d 1093].) These principles are invoked as a matter of policy to ensure the fair and orderly administration of justice. (Cf. Evid. Code, §§ 353, 354 [preserving evidentiary claims].)

Thus, under our cases, a criminal defendant cannot argue for the first time on appeal that the court ordered probation under unreasonable conditions (*Welch, supra,* 5 Cal.4th 228, 234-235), imposed a restitution fine following a guilty plea without proper advisements (*People* v. *Walker, supra,* 54 Cal.3d 1013, 1022-1023), or aggravated a sentence based on items contained in a

probation report that were erroneous or otherwise flawed (*People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 725 [135 Cal.Rptr. 392, 557 P.2d 976]).[14]

 Courts of Appeal have applied the waiver doctrine to various issues concerning the manner in which sentence is imposed and the hearing is conducted.[15] Most notable are a minority of cases holding that a defendant cannot complain for the first time on appeal about the court's failure to state reasons for a sentencing choice. (*People v. Neal, supra,* 19 Cal.App.4th

---

[14]We also have held that in proceedings to certify a juvenile for prosecution as an adult, the referee's failure to state reasons for finding the minor unfit for treatment in the juvenile court system is a waivable claim. (*In re Harris* (1993) 5 Cal.4th 813, 843 [21 Cal.Rptr.2d 373, 855 P.2d 391]; *People v. Chi Ko Wong, supra,* 18 Cal.3d 698, 716.)

[15]In *People v. Neal* (1993) 19 Cal.App.4th 1114 [24 Cal.Rptr.2d 129], the Second District Court of Appeal, Division Five, reviewed many of these cases. We report *Neal's* findings here: "[T]rial counsel's failure to object to a fine which may only be imposed when a defendant has 'the ability to pay' it bars raising any issue in connection with the propriety of such an order on appeal. (*People v. McMahan* (1992) 3 Cal.App.4th 740, 750 [4 Cal.Rptr.2d 708].) Issues concerning noncompliance with the statutory requirements that sentencing occur within specified time periods are waived by the absence of an objection in the trial court. (*People v. Gann* (1968) 259 Cal.App.2d 706, 716 [66 Cal.Rptr. 508]; [citation].) Any error in permitting a particular judge, in other than a plea bargain situation, to impose a sentence is waived by the failure to object in the superior court. (*People v. Daly* (1959) 168 Cal.App.2d 169, 173-174 [335 P.2d 503].) Also, the fact that a probation officer's report is presented orally rather than in compliance with the statutory mandate that it be in a written format is waived by the failure to bring the error to the trial court's attention. (*People v. Girard* (1971) 15 Cal.App.3d 1005, 1008 [93 Cal.Rptr. 676].) Issues concerning the constitutionality of a statute which prohibited cross-examination of prison psychiatrists at a probation and sentence hearing were waived by the failure to have interposed a contemporaneous objection in the trial court. (*People v. Walker* (1968) 266 Cal.App.2d 562, 567 [72 Cal.Rptr. 224].) When a defendant does not object to allowing the probation officer to determine the amount of restitution, the propriety of such an order has been waived for appellate purposes. (*People v. Keele* (1986) 178 Cal.App.3d 701, 707-708 [224 Cal.Rptr. 32].) . . . In *People v. Santana* (1982) 134 Cal.App.3d 773, 785 [184 Cal.Rptr. 733], the Court of Appeal held a defendant waived his right to object to the receipt into evidence of his statements to the probation officer by failing to raise the issue at the sentencing hearing. Similarly, issues concerning the admissibility of victims' statements made pursuant to section 1191.1 may not be presented on appeal if no objection was interposed contemporaneously at the sentencing proceeding. (*People v. Jones* (1992) 10 Cal.App.4th 1566, 1574 [14 Cal.Rptr.2d 9]; [citation].) Also, the fact that a probation report was not timely prepared is a matter which can be waived by reason of the failure to object. (*People v. Evans* (1983) 141 Cal.App.3d 1019, 1021 [190 Cal.Rptr. 633]; [citation].) Legal questions relating to a lack of notice at a sentencing hearing are waived on appeal in the absence of an objection in the trial court. (*People v. Birmingham* (1990) 217 Cal.App.3d 180, 183-184 [265 Cal.Rptr. 780].) The trial court's failure to secure a current probation report is waived on appeal by the failure to object. (*People v. Begnaud* (1991) 235 Cal.App.3d 1548, 1554-1555 [1 Cal.Rptr.2d 507]; [citation].) Arguments that a sentencing judge improperly read a preliminary hearing transcript and a codefendant's superior court file were waived when defense counsel never objected in the trial court and the issue was raised for the first time on appeal. (*People v. Evans, supra,* 141 Cal.App.3d at p. 1021.) Finally, the failure of a sentencing judge to inquire as to whether there is any reason sentence should not be pronounced as required by section 1200 is waived on appeal if no objection was interposed to this statutory requirement in superior court. (*People v. Rocha*

1114, 1117-1124; *People* v. *Crouch* (1982) 131 Cal.App.3d 902, 905 [182 Cal.Rptr. 701]; see also *People* v. *Mustafaa* (1994) 22 Cal.App.4th 1305, 1311 [28 Cal.Rptr.2d 172] [favoring contemporaneous objection to statement of reasons in dictum]; *People* v. *Olken* (1981) 125 Cal.App.3d 1064, 1067-1068 [178 Cal.Rptr. 497] [disallowing collateral attack based on failure to state reasons].)[16]

Faced squarely with the issue for the first time, we adhere to this minority view. We conclude that the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons.

Our reasoning is practical and straightforward. Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing. Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention. As in other waiver cases, we hope to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them.

---

(1955) 130 Cal.App.2d 656, 663 [279 P.2d 836].)" (*People* v. *Neal, supra,* 19 Cal.App.4th 1114, 1123-1124, fn. omitted.)

[16]We recognize that the weight of authority is otherwise. Several courts have refused to apply the waiver rule to defendants who complain for the first time on appeal that the trial court failed to state sentencing reasons, misweighed the various factors, or cited insufficient, duplicative, or inapplicable reasons in support of its sentencing choices. (*People* v. *Wortman* (1992) 11 Cal.App.4th 650, 652-653 [14 Cal.Rptr.2d 223]; *People* v. *Robinson* (1992) 11 Cal.App.4th 609, 616-617 [14 Cal.Rptr.2d 88]; *People* v. *Callahan* (1983) 149 Cal.App.3d 1183, 1188 [198 Cal.Rptr. 12]; *People* v. *Lutes* (1981) 117 Cal.App.3d 830, 832-833 [173 Cal.Rptr. 300]; *People* v. *White* (1981) 117 Cal.App.3d 270, 278-279 [172 Cal.Rptr. 612]; *People* v. *Jones* (1980) 111 Cal.App.3d 597, 604-605 [169 Cal.Rptr. 28]; *People* v. *Ramos* (1980) 106 Cal.App.3d 591, 598, fn. 1 [165 Cal.Rptr. 179].) However, no consistent rationale is cited in support of this view. The earlier cases tend to assume that sentencing errors are inherently nonwaivable (*People* v. *White, supra,* 117 Cal.App.3d at p. 279; *People* v. *Ramos, supra,* 106 Cal.App.3d 591, 598, fn. 1; see also *People* v. *Callahan, supra,* 149 Cal.App.3d 1183, 1188), and that the trial court is solely responsible for any sentencing error (*People* v. *Lutes, supra,* 117 Cal.App.3d 830, 832). Recent cases seem more concerned with the practical implications of the waiver rule. They insist that an objection requirement is too onerous, that it will increase complaints about trial counsel's performance, and that sentencing error is best handled on direct appeal. (*People* v. *Wortman, supra,* 11 Cal.App.4th 650, 653; *People* v. *Robinson, supra,* 11 Cal.App.4th 609, 617; see also *People* v. *Jones, supra,* 111 Cal.App.3d 597, 605.) We note that other cases—too many to cite here—have addressed such sentencing issues without stating whether an objection was made or necessary.

Defendant argues that this case is different in kind from other cases in which the waiver doctrine has been applied. He relies on the venerable notion that claims involving "unauthorized," "void," or "excessive" sentences, and sentences entered in "excess of jurisdiction," can be raised at any time. According to defendant, these concepts apply here because the court allegedly misapplied explicit sentencing rules and erroneously lengthened his term of imprisonment. However, we disagree with defendant's characterization of the issue.

■ As pertinent here, the "unauthorized sentence" concept constitutes a narrow exception to the general requirement that only those claims properly raised and preserved by the parties are reviewable on appeal. (*In re Ricky H.* (1981) 30 Cal.3d 176, 190-191 [178 Cal.Rptr. 324, 636 P.2d 13]; *People* v. *Davis* (1981) 29 Cal.3d 814, 827 & fn. 5 [176 Cal.Rptr. 521, 633 P.2d 186].) The "unauthorized sentence" principle also has been invoked to determine whether claims previously rejected or never raised are procedurally barred on habeas corpus. (*In re Harris, supra,* 5 Cal.4th 813, 838-841; *Neal* v. *State of California, supra,* 55 Cal.2d 11, 15-17.)

Although the cases are varied, a sentence is generally "unauthorized" where it could not lawfully be imposed under any circumstance in the particular case. Appellate courts are willing to intervene in the first instance because such error is "clear and correctable" independent of any factual issues presented by the record at sentencing. (*Welch, supra,* 5 Cal.4th 228, 235.) ■ As defendant suggests, legal error resulting in an unauthorized sentence commonly occurs where the court violates mandatory provisions governing the length of confinement.[17] It does not follow, however, that nonwaivable error is involved whenever a prison sentence is challenged on appeal. (Cf. § 1238, subd. (a)(10) [People's right to appeal "unlawful sentence" includes any sentence "not authorized by law," but excludes court's "choice" of the lower, upper, or middle term or consecutive terms of imprisonment.].)

In essence, claims deemed waived on appeal involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner. In *Welch, supra,* 5 Cal.4th 228, for example, we held that a contemporaneous objection is required when the court grants probation to an eligible defendant under conditions believed to be "unreasonable." Although the defendant claimed in *Welch* that the "reasonableness" requirement could not be waived because it was statutorily mandated,

---

[17]It is well settled, for example, that the court acts in "excess of its jurisdiction" and imposes an "unauthorized" sentence when it erroneously stays or fails to stay execution of a sentence under section 654. (*People* v. *Perez, supra,* 23 Cal.3d 545, 549-550, fn. 3; *Neal* v. *State of California, supra,* 55 Cal.2d 11, 16-17.) No serious claim is raised that the Court of Appeal erred in this case by addressing defendant's section 654 claim on the merits even though the issue was not raised below.

we characterized the issue in far different terms: "[Defendant] essentially argues only that the court exercised its otherwise lawful authority in an erroneous manner under the particular facts. . . . [P]robation conditions are rarely invalidated on this basis, and the appellate court is not best suited to determining how such an outcome might affect the defendant's suitability for probation. Traditional objection and waiver principles encourage development of the record and a proper exercise of discretion in the trial court." (*Id.*, at p. 236.)

Similar considerations apply to the sentencing claims raised here. Defendant does not dispute that, assuming aggravation outweighed mitigation, the court was authorized to impose the upper term under sections 288 and 1170, subdivision (b). Consecutive sentences were similarly allowed under section 1170.1, subdivision (a) as long as one or more valid aggravating factors were cited in support of that choice. Indeed, it appears that the trial court in this case was authorized to impose an even longer term under section 667.6, subdivision (c)—a consecutive sentencing option it explicitly rejected.

With the exception of defendant's claim that the court violated the ban on multiple punishment under section 654 (see fn. 17, *ante*, p. 354), defendant argues only that the court abused its discretion in aggravating his sentence and imposing consecutive terms. In other words, defendant claims the factors cited in support of such choices were inapplicable, duplicative, and improperly weighed. Much like the probation conditions challenged in *Welch,* fact-specific errors in the court's statement of reasons are not readily susceptible of correction on appeal. The reviewing court cannot substitute its reasons for those omitted or misapplied by the trial court, nor can it reweigh valid factors bearing on the decision below. (See, e.g., *People* v. *Price* (1991) 1 Cal.4th 324, 491-492 [3 Cal.Rptr.2d 106, 821 P.2d 610]; *People* v. *Coleman, supra,* 48 Cal.3d 112, 161-162, 166; *People* v. *Harvey* (1979) 25 Cal.3d 754, 758-759, 761 [159 Cal.Rptr. 696, 602 P.2d 396].)

■ Indeed, as these cases make clear, the statement of reasons is intended to facilitate review of sentencing decisions that otherwise rest within the sound discretion of the trial court. When that court errs in identifying or articulating its sentencing choices, the reviewing court has no choice but to remand the matter for resentencing unless it finds the error nonprejudicial, i.e., it is "not reasonably probable that a more favorable sentence would have been imposed in the absence of the error." (*People* v. *Avalos* (1984) 37 Cal.3d 216, 233 [207 Cal.Rptr. 549, 689 P.2d 121].) As noted above, application of the waiver rule helps avoid error and the need for appellate intervention in the first place.

■ Defendant further claims that a rule requiring a contemporaneous objection to defects in the court's statement of reasons is impractical. He

insists it is unrealistic to expect counsel to comprehend, remember, and respond to the various sentencing factors and choices delivered orally by the court at the hearing. Defendant also asserts that courts typically solicit argument from counsel *before* pronouncing sentence, and that attempts to challenge the court's ruling after it is announced are usually discouraged or futile.

We recognize that pronouncement of sentence is a highly technical process encompassing a wide variety of procedural and substantive matters. Various manuals and rules of court instruct trial judges on the precise nature, chronology, and form of issues to be addressed at sentencing. As defendant suggests, and so far as we can tell, such materials generally provide no guidance on whether or how the court should accommodate objections by the parties to its statement of reasons and sentencing choices. (Cal. Criminal Law, Procedure and Practice (Cont.Ed.Bar 1994) pp. 961-962; Erwin et al., 5 Cal. Criminal Defense Practice (1994) §§ 91.12[4]–91.12[5][a], pp. 91-51–91-56; Cal. Judges Benchbook, Criminal Posttrial Proceedings (1991) pp. 218-221; *id.* (1994 supp.) p. 192; Greer & Clarke, The Felony Sentencing Manual (1991) ch. 8, p. 8-3.)

Of course, there must be a meaningful opportunity to object to the kinds of claims otherwise deemed waived by today's decision. This opportunity can occur only if, during the course of the sentencing hearing itself and before objections are made, the parties are clearly apprised of the sentence the court intends to impose and the reasons that support any discretionary choices.

In sum, we hold that complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal. We disapprove any contrary view or holdings expressed by the Courts of Appeal. (See fn. 16, *ante* p. 353.)[18]

■ The question remains, however, whether the waiver doctrine should be applied in this case. Defendant argues that we are establishing an

---

[18]Defendant and the dissenting justice below suggest that our holding will not promote judicial economy because any sentencing claim deemed procedurally barred on direct appeal will simply be raised on habeas corpus, presumably under the rubric of ineffective assistance of counsel. Taken to its extreme, however, this argument would theoretically excuse the defense from objecting to *any* error committed during a criminal trial, including evidentiary error. Existing law does not support so radical a view. The point is that by encouraging counsel to intervene at the time sentencing choices are made, we hope to reduce the number of issues raised in the reviewing court in *any* form. Of course, the cognizability of such claims on habeas corpus is not before us and it would be premature to ruminate on the nature of a

objection requirement where none had clearly existed before, and that it would be unfair to restrict appellate review of a criminal sentence that was litigated and imposed before the new rule took effect. Defendant cites *Welch, supra*, 5 Cal.4th 228, in support of this view.

Before our decision in *Welch*, appellate courts had uniformly stated or implied that challenges to the reasonableness of a probation condition could be raised at any time. As previously noted, *Welch* rejected this approach and held that such claims are waived unless preserved in the trial court. However, *Welch* declined to apply its new procedural rule retroactively to cases in which the sentencing hearing was held before the decision became final. This approach was adopted not as a matter of due process, but to ensure the equitable and orderly administration of the law. "[D]efendant should not be penalized for failing to object where existing law overwhelmingly said no such objection was required. It would be unfair to effectively bar any review of defendant's claims where the rule requiring their preservation in the trial court was adopted in the context of [this] appeal." (*Welch, supra*, 5 Cal.4th 228, 238, fn. omitted.) Prospective application of the *Welch* rule also gave the bench and bar an opportunity to learn about the change in the law before it took effect in other cases.

A similar approach is warranted here. Before today's decision, and even after *Welch, supra*, 5 Cal.4th 228, the clear weight of authority had broadly held or assumed that errors in the court's sentencing choices and statement of reasons could not be waived. For the most part, treatises and secondary authorities have ignored the contrary minority view; they either fail to warn litigants that they must object in order to preserve such issues or they affirmatively state that no objection is required.[19] As a result, it appears that sentencing hearings have been conducted in a manner that has discouraged,

---

meritorious claim. As already suggested, however, a claim may be independently cognizable on habeas corpus depending on whether it involves an "unauthorized sentence." We have concluded that defects in the court's discretionary sentencing choices and statement of reasons do not result in an "unauthorized sentence." In addition, the standards for extraordinary relief based on a claim of ineffective assistance of counsel are familiar and stringent. Both incompetence *and* prejudice must be shown.

[19] As noted earlier, few cases apply the waiver doctrine in this context and they are fairly narrow in scope. They generally concern the trial court's failure to state sentencing reasons, and none holds that other issues governed by today's decision—inapplicable, insufficient, and duplicative factors—are also waived in the absence of an objection. (See, e.g., *People* v. *Neal, supra*, 19 Cal.App.4th 1114, 1117; *People* v. *Crouch, supra*, 131 Cal.App.3d 902, 905.) The instant Court of Appeal appears to have been the first to require a defendant to object to invalid (as opposed to omitted) factors, and it did not extend its waiver rule (as we do) to dual-use claims. While we have found one treatise advising counsel to object when the court fails to state its sentencing reasons, it was only recently amended to contain such a warning

disallowed, and discounted objections to the type of claims raised by defendant. Because our holding effectively changes the circumstances under which such claims are litigated, and may require substantial practical alterations in the way sentencing proceedings are routinely conducted, today's decision does not apply to cases in which the sentencing hearing was held before our decision becomes final.

## III. DISPOSITION

The judgment of the Court of Appeal is reversed insofar as it reversed the convictions and sentences on counts 2 and 14, and insofar as it rejected certain of defendant's sentencing claims on grounds of waiver. The matter is remanded to the Court of Appeal with directions to (1) reinstate the convictions on counts 2 and 14, (2) consider all sentencing claims related to the reinstated counts, and (3) consider sentencing claims related to the other counts, which claims were previously deemed waived. In all other respects, the judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Arabian, J., George, J., and Werdegar, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—I join the majority in upholding defendant's convictions on the two counts of lewd conduct that were based on acts of fondling his girlfriend's 11-year-old daughter with "the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of [himself] or of the child . . . ." (Pen. Code, § 288, subd. (a).)[1] This result follows from our decision in *People* v. *Harrison* (1989) 48 Cal.3d 321, 324 [256 Cal.Rptr. 401, 768 P.2d 1078], which holds that in a continuous sexual assault on an *adult* victim, each distinct sex act may constitute a separate statutory violation. As the majority concludes here, the same is true in the case of a *child* victim: "Each individual act that meets the requirements of section 288 can result in a 'new and separate' statutory violation." (Maj. opn., *ante,* at pp. 346-347.) I also agree with the majority that defendant has not waived his claims of sentencing error and that the Court of Appeal should have considered those claims. Thus I join fully in the dispositional order remanding this case to the Court of Appeal and directing

in light of *People* v. *Neal, supra,* 19 Cal.App.4th 1114. (5 Cal. Criminal Defense Practice, *supra,* § 91.12[5][a], pp. 91-55–91-56 & fn. 105.) Other materials indicate that no objection is required. (See, e.g., Cal. Judges Benchbook, Criminal Proceedings (1994 supp.), *supra,* p. 192; Greer & Clarke, The Felony Sentencing Manual, *supra,* p. 8-3.)

[1]Further statutory references are to the Penal Code.

it to reinstate defendant's convictions on the two counts of lewd conduct based on fondling and to consider defendant's claims of sentencing error, but otherwise affirming the judgment.

I disagree, however, with the majority's adoption of a new "waiver" rule requiring trial counsel in future cases to make a contemporaneous objection at the sentencing hearing in order to preserve for appeal a claim of sentencing error.

The majority acknowledges that "there must be a *meaningful opportunity* to object to the kinds of claims otherwise deemed waived by today's decision." (Maj. opn., *ante*, at p. 356, italics added.) It then states: "This opportunity can occur only if, *during the course of the sentencing hearing itself* and before objections are made, the parties are clearly apprised of the sentence the court intends to impose and the reasons that support any discretionary choices." (*Ibid.*, italics added.)

To determine whether the majority's "tentative ruling" procedure, in which the defense receives its first notice of the proposed sentence at the sentencing hearing, will afford the defense a meaningful opportunity to object, it is necessary to confront the realities of felony sentencing.

A defendant's aggregate sentence is comprised of the terms imposed by the trial court for the individual counts and for any enhancements. There are a myriad of sentencing choices that, depending on the circumstances and nature of the choice made, may require an adequate statement of reasons— for instance, imposing a state prison term rather than granting probation to a defendant who is statutorily eligible for probation; rejecting a recommendation that a minor be committed to the California Youth Authority rather than sentenced to prison (see *People* v. *Jones* (1988) 46 Cal.3d 585, 602 [250 Cal.Rptr. 635, 758 P.2d 1165]); imposing other than the middle term for an offense or enhancement for which a range of three terms is authorized; requiring the defendant to serve the terms on different counts consecutively rather than concurrently; when sentencing to consecutive terms for certain offenses, imposing a full consecutive term (see § 667.6, subd. (c)), rather than one-third of the middle term (see § 1170.1, subd. (a)) on a subordinate count (see *People* v. *Belmontes* (1983) 34 Cal.3d 335, 347-349 [193 Cal.Rptr. 882, 667 P.2d 686]); and imposing two or more of certain specified enhancements for a single offense (see § 1170.1, subd. (e)). A trial court's oral statement explaining the reasons supporting its sentencing choices is generally extemporaneous and discursive, and may be quite lengthy. In complex cases involving multiple counts with multiple sentence enhancements, therefore, it may be difficult for trial counsel to immediately identify any deficiencies in the trial court's oral statement of reasons.

Given these realities of felony sentencing, a trial court's announcement of its proposed sentencing rulings at the sentencing hearing itself, as the majority proposes, will not afford trial counsel the required meaningful opportunity to identify and object to any sentencing error, because counsel will have no time in which to analyze the ruling or to conduct legal research. (Cf. Cal. Rules of Court, rule 232 [granting counsel in civil cases 15 days to file objections to proposed statement of decision].)

In theory, this defect in the majority's "tentative ruling" procedure could be remedied by having the trial court provide counsel with a detailed written statement of the proposed sentence, with the reasons for each sentence choice, a few days before the sentencing hearing. But this approach is impractical, as the majority implicitly recognizes, because it would impose an onerous burden on our criminal trial courts, which are already overtaxed by the labyrinthine complexities of felony sentencing. Providing notice of intended sentence in advance of the sentencing hearing would lighten the burden at the appellate level by reducing the number of claims of sentencing error that can be raised on direct appeal, but only by disproportionately increasing the burden at the trial level. Because trial courts would have to follow this procedure of providing tentative rulings in all felony cases (even though in most felony cases there is no appeal), the additional time spent at the trial level would more than offset the time saved on appeal.

Rather than expanding the "tentative ruling" procedure to meet due process concerns, the proper solution is not to impose a contemporaneous objection requirement in the first place. When a ruling involves factual matters that can be resolved only at the trial level (such as misstatements by the trial court of facts supporting a given sentence), an appellate court may properly insist on a contemporaneous objection to preserve an issue for review on appeal. But errors of a legal nature (such as dual use of the same fact or the absence of reasons supporting a particular sentence) should be cognizable on appeal even in the absence of an objection in the trial court. This view is faithful to the reasoning of this court's recent decision in *People v. Welch* (1993) 5 Cal.4th 228, 235-236 [19 Cal.Rptr.2d 520, 851 P.2d 802]. In that case, this court, in deciding when a defendant must object to a trial court's imposition of a probation condition, distinguised between factual mistakes appropriate for resolution by trial judges and "clear and correctable legal error" that could be raised on appeal without trial court objection. I would draw that same distinction here with regard to felony sentencing.

For these reasons, while I join in the judgment, I dissent from that part of the majority opinion establishing an absolute waiver rule encompassing virtually all trial court sentencing error, for this rule either will afford no fair

opportunity for objection or will subject already overextended trial courts to new, time-consuming burdens.

Respondent's petition for a rehearing was denied March 14, 1995, and the opinion was modified to read as printed above.