Filed 4/12/22  P. v. Slavens CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>   v.<br><br>ROBERT WILLIS SLAVENS,<br><br>       Defendant and Appellant. | C093249<br><br>(Super. Ct. Nos. 20F4340, 19F2250, 16F6091) |

A jury found defendant Robert Willis Slavens guilty on four counts of felony resisting an executive officer (Pen. Code, § 69)[1] and two counts of misdemeanor resisting a public officer (§ 148, subd. (a)(1)).  The trial court revoked defendant's probation in two, unrelated cases and sentenced him to an aggregate term of 14 years in state prison.  On appeal, defendant contends there was insufficient evidence to convict him on two of

---

[1]  Undesignated statutory references are to the Penal Code.

1

the felony convictions. He also contends the trial court abused its discretion in imposing consecutive sentences and asks this court to review the trial court's ruling on his *Pitchess* motion. We affirm the judgment.

## I. BACKGROUND

In July 2020, defendant was serving his probation in Shasta County Superior Court case Nos. 19F2250 (case No. 250) and 16F6091 (case No. 091). As a condition of his probation, defendant was prohibited from using illegal drugs and was required to submit to regular drug testing.

On July 14, 2020, defendant arrived at the probation office to provide a sample for testing. Deputy Probation Officer Casey Verne Chorpenning brought defendant into the "back office" restroom to "watch him provide the urinalysis sample." Deputy Chorpenning then walked defendant out of the restroom and showed the sample to defendant's probation officer, Deputy Probation Officer Delina Brown. Deputy Brown was able to see that the sample tested positive for methamphetamine and amphetamine; she asked defendant to sit in the chair just outside the bathroom. Deputy Brown then asked defendant when he last used drugs; he admitted to using "two or three days ago while he was in custody."

Deputy Brown asked defendant to stand up and "place his hands on the wall." Defendant stood, placed one hand on the wall then looked over both his shoulders. Deputy Chorpenning was nearby filling out paperwork; Deputy Probation Officer Schuette stood to Deputy Brown's right. Deputy Brown then asked defendant to put his hands "behind his back and interlace his fingers." Deputy Chorpenning heard the exchange and turned to watch Deputy Brown detain defendant. Deputy Brown "attempted to place [a] control hold" on defendant but he "ripped away" from her and tried to leave. Deputy Brown told defendant to stop, but he refused and continued toward the exit.

2

Other deputies yelled at defendant to stop and put his hands behind his back, but he continued to run. On his way toward the exit, defendant passed by Deputy Probation Officer John Strain's office. Defendant "elbowed" Deputy Strain in the face before Deputy Strain was able to get defendant to the ground in a "control hold." As defendant "was being taken down to the ground, his face hit the wall in the hallway and his nose and eyebrow area were injured." On the ground, defendant continued to fight.

Meanwhile, Deputy Chorpenning came to help; he saw defendant on the ground with two deputies directing him to put his hands behind his back. Deputy Chorpenning ordered defendant to put his right hand behind his back, but defendant ignored him. Deputy Chorpenning attempted to gain control of defendant's right hand, but defendant struggled against him and refused to comply. Deputy James Schuette was able to place a "figure-four control hold" on defendant to gain control of defendant's legs. Meanwhile, defendant's face was bleeding, and he was trying "to spit blood at the officers" and "scoot" his way toward the exit.

Deputy Probation Officer Trammel arrived to assist the other deputies. Deputy Trammel dropped to his knees and put his hands on defendant's head. He saw defendant was bleeding and tried to stabilize defendant's head to prevent further injury and to keep defendant's blood from spreading "everywhere." Defendant was still trying to get away from the officers; he was "extremely sweaty" and "slippery." He was also coughing and spitting. Deputy Trammel was covered in defendant's blood. Deputy Trammel continued to brace defendant's head, his hands slipping off several times. Defendant continued yelling and screaming.

The deputies were finally able to handcuff defendant, at which point defendant said he could not breathe so the deputies rolled him to his side. Deputy Brown called 9-1-1 for emergency medical assistance; defendant was still trying to get to the exit so deputies, including Deputy Chorpenning, continued to hold on to him. When medical

3

helped arrived, defendant was still fighting with the deputies; with effort, they were able to get defendant on the gurney and he was taken to the hospital.

The People later charged defendant with six counts of felony obstructing or resisting an executive officer, identifying Deputy Trammel in count 2 and Deputy Chorpenning in count 3. The People also charged defendant with misdemeanor battery upon an officer (§ 243, subdivision (b)) and six counts of misdemeanor resisting, obstructing, or delaying an officer (§ 148, subd. (a)(1)), and alleged defendant was previously convicted of a serious or violent felony (§ 1170.12).

A jury found defendant guilty on six counts, including felony obstructing or resisting Deputies Chorpenning and Trammel. The trial court subsequently sentenced defendant to an aggregate term of 14 years in state prison, including four separate, consecutive terms for felony obstructing or resisting an executive officer, one for each officer, and sentences imposed on case Nos. 250 and 091.

## II. DISCUSSION

*A.    Sufficiency of the Evidence*

Section 69 imposes felony or misdemeanor liability on anyone "who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty." (§ 69, subd. (a).) "The statute sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty." (*In re Manuel G.* (1997) 16 Cal.4th 805, 814.)

"In considering a challenge to the sufficiency of the evidence . . . , we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable

4

doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' " (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

Here, the record is replete with evidence that defendant fought with deputies Chorpenning and Trammel while they, along with several other deputy probation officers, attempted to detain him. Deputy Trammel had to hold defendant's head steady while defendant tried to break free. While Deputy Trammel held defendant's head, defendant spat blood at him and the other deputies. Deputy Chorpenning also had to fight defendant to maintain a grip on defendant's right arm, to keep him from fleeing. Indeed, defendant continued to fight with Deputy Chorpenning and the other deputies while they waited for medics to arrive.

We thus conclude there is sufficient evidence to support the jury's verdict on counts 2 and 3.

B.    *Sentencing*

Defendant contends the trial court abused its discretion in imposing consecutive sentences on his multiple convictions for felony resisting an executive officer and in failing to state its reasons for imposing consecutive sentences. "[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.)

At sentencing, the trial court said it was imposing consecutive sentences on defendant's multiple convictions for felony resisting an executive officer because each of these crimes was a separate act of violence against a separate victim. Defendant did not

5

object. He has, therefore, forfeited this claim on appeal. (*People v. Scott, supra*, 9 Cal.4th at p. 356.)

## C. *Pitchess Ruling*

Prior to trial, defendant filed a *Pitchess* motion seeking discovery of certain law enforcement personnel records of one officer, including any complaints of false arrest, fabrication of charges or evidence, illegal searches, or dishonesty. The trial court granted the motion and conducted an in-camera hearing.

Defendant asks this court to conduct an independent review of the sealed records of the trial court's hearing on his *Pitchess* motion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1229, 1232.) The People do not oppose the request.

We will not disturb a trial court's ruling on a *Pitchess* motion absent an abuse of discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039, disapproved on another ground in *Facebook, Inc. v. Superior Court* (*Touchstone*) (2020) 10 Cal.5th 329, 345, fn. 6.) We reviewed the sealed transcript of the in camera proceeding in which the trial court questioned the custodian of records under oath as well as the documents reviewed by the trial court. Based on our review, we find no procedural or substantive error. The court did not abuse its discretion in finding no additional disclosable evidence.

## III.  DISPOSITION

The judgment is affirmed.


/S/

RENNER, J.




We concur:


/S/

ROBIE, Acting P. J.


/S/

MAURO, J.

7