Filed 8/16/24 P. v. Nixon CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098639 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE013655) |
| v. | |
| DONALD ALAN NIXON, | |
| Defendant and Appellant. | |

Defendant David Alan Nixon is serving a seven-year sentence for assault with a deadly weapon. On appeal, he contends that the trial court violated the Sixth Amendment and denied him due process by sentencing him to the upper term based on aggravating circumstances that were neither alleged by the prosecution nor proven to a jury beyond a reasonable doubt. Finding no constitutional violation, we affirm.

BACKGROUND

An amended information charged Nixon with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and alleged as enhancements that Nixon personally used a deadly weapon (§ 12022, subd. (b)(1)) and personally inflicted great bodily injury

(§ 12022.7, subd. (a)).[1]  The information also alleged three aggravating circumstances: (1) that Nixon committed a crime involving great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)); (2) that he was armed with or used a weapon in committing the crime (rule 4.421(a)(2)); and (3) that the victim was particularly vulnerable (rule 4.421(a)(3)).[2]

In 2020, Nixon and the victim, K.W., lived in the same apartment complex in Sacramento.  They were friends and spent time together.  Their relationship changed when she told him she could not buy him cigarettes.  Nixon sent her a text calling her a "bitch" and "ungrateful."  K.W. would still see Nixon around the complex but did not speak to him.

In the evening of August 25, 2020, after she returned home from work, K.W. joined two neighbors talking outside.  Nixon was also outside, drinking wine and talking with other residents.  At one point, Nixon got up and said, "I'm about to go start some shit."  He walked over to where K.W. was standing and called her a "bitch."  K.W. told him that, "[i]f you are feeling that drunk, you should go inside."

Nixon threw a glass of wine in K.W.'s face.  He hit her with the wine glass, breaking it.  He continued to hit her with the broken glass, striking her six or seven times.  After the fourth time, K.W. fell to the ground, and Nixon continued to hit her.  He stood down after a resident told him to stop.

K.W. had a large gash on her face.  Skin was hanging off her cheek.  Witnesses put a towel on her face as a makeshift bandage.  There was blood all over K.W., the sidewalk, and a fence in the area.

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  Undesignated rule references are to the California Rules of Court.

2

Nixon calmly walked back to a patio area and sat down. An officer testified that, when police arrived, Nixon was "nonchalant" in his interaction with them.

K.W. was taken to the hospital. She had a large laceration to the left side of her face and another on her neck. One cut reached an artery, which was immediately stitched to keep her from bleeding out. A plastic surgery team placed five deep sutures into the muscle to bring the tissues together and then closed the skin with 30 sutures. K.W. testified that, as a result of the incident, "I don't look the same. I'll never look the same."

Nixon testified at trial as well. He said that K.W. attacked him after he accidentally spilled wine on her. He responded to the attack, but only hit her ponytails. Nixon denied hitting K.W. with the broken glass. He stated that another resident cut K.W.'s face in an effort to set him up.

While the jury was deliberating on the assault charge and accompanying enhancements, Nixon formally waived his right to have the jury decide the aggravating factors. The trial court advised Nixon that the People had alleged three aggravating circumstances and that he enjoyed the right to a jury trial on them. Nixon affirmed that he understood, waived his right to a jury trial, and elected for the court to decide whether the aggravators had been proven.

The jury returned its verdict on the underlying charges, finding Nixon guilty of assault with a deadly weapon and both enhancements to be true.

The court then conducted a bench trial on the aggravating circumstances. The prosecution began by noting that it had alleged three aggravating factors. With respect to the first two—that the crime involved great bodily injury and that Nixon was armed with a weapon—the prosecution asserted that the jury had already found those facts to be true. With respect to the third—that the victim was particularly vulnerable—the prosecutor argued that K.W. was completely taken off guard by Nixon's actions and was unable to defend herself.

The trial court noted that, as to the first aggravating factor, the court was prohibited from relying on great bodily harm to the victim for sentencing purposes because such harm was an element of one of the enhancements. The court observed, however, that the first aggravating factor also encompassed "other acts disclosing a high degree of cruelty, viciousness, or callousness." The prosecutor agreed, stating, "I would certainly argue that this was a very cruel and vicious and callous crime and I think the evidence shows that as well, so if the Court is willing to consider just that portion, we would submit on that as well."

Defense counsel "submit[ted] on most of the arguments," adding that "the dual use issue has been addressed by the Court." Counsel then contended that the prosecution had not proved that the victim was particularly vulnerable, because she was not in a vulnerable state.

The court found "all three aggravating factors" were proven beyond a reasonable doubt.

The court then turned to considering Nixon's sentence. K.W. made a statement explaining the crime's impact on her. She told the court: "It's hard to sleep at night. The glass crushing into my face plays over and over in my mind. My face still hurts at times. I look in the mirror every day and I know I'll never look like I used to."

The trial court then imposed sentence. It began by explaining: "I have been a judge for over 24 years now and I see a lot of horrific things in this courtroom, and generally speaking, there's a reason why things happen . . . . [¶] In this case there's just absolutely no reason for this. You have a young lady who is literally just standing out in front of her apartment talking to two other people, and then Mr. Nixon just comes up for no good reason, throws wine in her face, hits her over the head with the wine glass, then uses the broken shard of glass to slice open her face. I still don't know why this occurred. . . . And this was in the Court's view extremely vicious, cruel and callous. She will live with this scar for the rest of her life."

4

After seeking clarification on the extent of K.W.'s injuries, the court continued: "So this is actually a life-threatening injury. It's also a case that, quite frankly, could have been charged as mayhem, because there has been permanent disfigurement to this woman . . . . [T]he sense that I got from the trial is that Mr. Nixon just took a dislike to [K.W.] for whatever reason, but there is no good reason for a 66-year-old man with no criminal record to do what you did. There is no good reason. She wasn't doing anything to you. Zero. She was doing nothing to you. This was cruel. You disfigured her permanently. It was vicious. There is no good reason this occurred. It was callous. [¶] During your testimony . . . there were times when you chuckled during your own testimony on a case of this serious nature. You actually chuckled. You found some humor in this case. There is nothing humorous about this case. It is horrible what you did to this young lady."

The court then turned to "vulnerability," explaining that the victim was "very youthful." K.W. "was innocent and . . . she was vulnerable in the sense that she's naïve and trusting."

The trial court noted that Nixon had reported that he had been the victim of childhood abuse. The court said it would consider this circumstance in mitigation, adding, "[b]ut again, I think this was cruel. It was vicious. It was callous. You showed no remorse. Mr. Nixon, you showed no remorse today. You showed no remorse in the statement you provided to [p]robation. You continued to assert you did nothing wrong." Nixon said, "Correct." The trial court responded, "[t]he record will reflect Mr. Nixon has said, 'Correct,' so that is his position."

The court concluded: "I have to weigh that level of callousness against an individual at 66 who has no record and who self-reports being physically abused and/or neglected as a child. [¶] So when I do that, I cannot impose the low term. I think that would just be wrong." The court further noted that, under *People v. McGee* (1993) 15 Cal.App.4th 107, it could not impose an additional one-year enhancement for Nixon's

5

use of a weapon, observing: "So even though the jury found that to be true, I can't impose it, but I can certainly consider it. I can certainly consider it in deciding whether or not you should get the low, middle, or high term, and so I'm considering the fact this was unprovoked and in that sense the victim was vulnerable and she was vulnerable for the reasons I stated. She's very, very young in her thinking and her interaction with people. She comes across as being quite naïve and trusting, so to that extent I think she is vulnerable. And this came out of nowhere. Nowhere. And you did use a weapon for which you are not getting punished for. I can't add an additional year for that. [¶] So taking into consideration the fact that you don't have a record, that you self-report some abuse as a child, I still think that the aggravating factors far outweigh the mitigating factors."

The court sentenced Nixon to the upper term of four years for assault with a deadly weapon (§ 245, subd. (a)(1)) and an additional three years for the enhancement found true by the jury that he inflicted great bodily injury on the victim (§ 12022.7). Again citing *McGee*, the court did not impose sentence on the enhancement for use of a weapon (§ 12022, subd. (b)(1)). The aggregate state prison term was seven years.

## DISCUSSION

Section 1170, subdivision (b)(2) provides that a "court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." Under the Sixth Amendment, any fact other than the fact of a prior conviction that "increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.) Under section 1170, subdivision (b)(2), the middle term is "the statutory maximum for Sixth Amendment purposes." (*People v. Falcon* (2023)

6

92 Cal.App.5th 911, 933, review granted Sept. 13, 2023, S281242.) A defendant may waive the right to have a jury make findings that increase the sentence. (*People v. Collins* (2001) 26 Cal.4th 297, 305.)

Nixon does not dispute that he validly waived a jury trial on the three aggravating circumstances pleaded by the prosecution, but he contends that the trial court violated his Sixth Amendment rights by relying on *other* aggravating factors that were not the subject of his waiver. Specifically, Nixon claims that the trial court relied on four additional aggravating factors when sentencing him: (1) the crime was unprovoked; (2) the victim was permanently disfigured; (3) Nixon did not show remorse; and (4) he used a weapon. We reject this claim because the record demonstrates that the trial court's selection of the upper term rested on the three aggravating factors that the People pleaded and on which Nixon formally waived a jury trial.

With respect to the first three assertedly new aggravating factors, we think the record is clear that the trial court's statements regarding the lack of provocation, the victim's disfigurement, and Nixon's failure to show remorse all related to the court's findings that the crime disclosed a high degree of cruelty, viciousness, or callousness or that the victim was particularly vulnerable. For example, when discussing the unprovoked nature of the attack and K.W.'s disfigurement, the court said: "[K.W.] wasn't doing anything to you. Zero. She was doing nothing to you. This was cruel. You disfigured her permanently. It was vicious. There is no good reason this occurred. It was callous." The court later explained that it was "considering the fact [the attack] was unprovoked *and in that sense* the victim was vulnerable." (Italics added.) The trial court also referred to Nixon's lack of remorse as evidence of the cruelty, viciousness, and callousness of the crime, stating, "I think this was cruel. It was vicious. It was callous. You showed no remorse. Mr. Nixon, you showed no remorse today. You showed no remorse in the statement you provided to [p]robation." When Nixon confirmed that he continued to maintain that he did nothing wrong, the trial court said, "I have to weigh that

7

level of callousness against an individual at 66 who has no record and who self-reports being physically abused and/or neglected as a child." These statements, and the transcript of the sentencing proceeding as a whole, make clear that the trial court did not rely on new aggravating circumstances on which Nixon had not waived his right to a jury trial.

With respect to the fourth assertedly new aggravating circumstance—Nixon's use of a weapon—this factor was pleaded by the prosecution and Nixon waived his jury trial right with respect to it. There was thus no violation of the Sixth Amendment with regard to this aggravator.[3]

Nixon argues that the court necessarily relied on unpleaded aggravating circumstances because otherwise the valid aggravating circumstances were in equipoise with the mitigating circumstances and the court could not have concluded that the aggravating factors far outweighed the mitigating ones. That argument overlooks the fact that sentencing courts have discretion in weighing aggravating and mitigating factors and " 'may balance them against each other in qualitative as well as quantitative terms.' " (*People v. Lamb* (1988) 206 Cal.App.3d 397, 401.) In this case, the record demonstrates that the trial court believed that the cruelty, viciousness, and callousness of Nixon's crime as well as K.W.'s vulnerability—factors that were both pleaded and subject to Nixon's jury trial waiver—outweighed the mitigating factors and justified imposition of the upper term.

In light of our conclusions, we need not address Nixon's additional contentions that he did not receive fair notice because his upper-term sentence was based on aggravating circumstances that the prosecution did not plead or that he received

---

[3] As the trial court and the parties recognized at the sentencing hearing, a court may not use a fact constituting an element of the offense to also aggravate a sentence. (*People v. Scott* (1994) 9 Cal.4th 331, 350; Rule 4.420(h).) Nixon does not assert as a basis for reversal that the trial court violated this prohibition when considering his use of a weapon at sentencing when use of a deadly weapon was an element of his conviction offense.

ineffective assistance of counsel when his lawyer failed to object to the trial court's reliance on unpleaded or unproven aggravating factors.

DISPOSITION

The judgment is affirmed.


    /s/                          
FEINBERG, J.


We concur:


    /s/                          
EARL, P. J.


    /s/                          
ROBIE, J.