Filed 12/11/24  P. v. Carrillo CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEJANDRO CARRILLO,<br><br>    Defendant and Appellant. | 2d Crim. No. B330152<br>(Super. Ct. No. 1333854)<br>(Santa Barbara County) |

Alejandro Carrillo appeals the judgment entered following a resentencing hearing conducted pursuant to Penal Code section 1172.75.[1]  Appellant contends the trial court abused its discretion in refusing to dismiss firearm and gang enhancements in furtherance of justice pursuant to section 1385.  We affirm.

*Appellant's Conviction and Original Sentence*

In 2012 a jury convicted appellant of first degree murder (§§ 187, subd. (a), 189 subd. (a)); possession of a firearm by a

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

felon (former § 12021, subd. (a)(1), now § 29800, subd. (a)(1)); possession of a controlled substance by a felon while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a)); possession of a controlled substance in jail (§ 4573.6); and possession of a "shank" while in custody (§ 4502, subd. (a)). The jury found true gang enhancements (§ 186.22, subd. (b)(1)) and an allegation that appellant had personally discharged a firearm causing death (§ 12022.53, subd. (d)). The trial court found true an allegation that he had served a prior prison term within the meaning of former section 667.5, subdivision (b) (§ 667.5(b)).

The trial court sentenced appellant to a determinate term of 13 years, followed by an indeterminate term of 50 years to life. The determinate term included one year for the prior prison term and six years for the gang enhancements. The indeterminate term consisted of 25 years to life for the first degree murder conviction plus a consecutive term of 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)).

*Facts*

The facts are taken from pages 2-3 of our December 15, 2014 unpublished slip opinion affirming appellant's judgment of conviction. (*People v. Carrillo* (Dec. 15, 2015, B245720).) We take judicial notice of the slip opinion. (Evid. Code, §§ 452, subd. (d), 459.)

"[Appellant] was the leader of the Southside Sureño criminal street gang in Guadalupe [in Santa Barbara County]. . . . All those connected with the Sureño gang used and sold drugs." Pedro Gonzalez was a member of the gang.

"Flores was the leader of the Westside gang in Santa Barbara and a member of the Mexican Mafia. He controlled the drug trade in Santa Barbara County. Flores claimed he was

2

authorized by the Mexican Mafia to order persons to be murdered."

"On February 13, 2010, [appellant] met with [another gang member] and asked him to help him 'smoke a paisa.' While there, [appellant] called Flores and was given permission 'to take care of' Gonzalez.'"

Appellant and Gonzales argued at the home of another gang member. "The argument ended when [appellant] shot Gonzalez in the head. [Appellant] and [another gang member] dumped the body in a field . . . ."

"Later, during an unrelated investigation, Flores told . . . an undercover agent . . . that he paid Gonzalez $3,600 for methamphetamine but that what Gonzalez gave him was not meth. Flores [said] that he asked his associate 'to kill a paisa in Guadalupe who sold him some bunk dope.'"

"When [appellant] was arrested on February 28, 2010, [he] was armed with a gun loaded with five hollow-point bullets and a sixth spent cartridge."

*Procedural Background*

In August 2022 appellant filed a request for resentencing pursuant to section 1172.75. The request was based on the invalidity of the former section 667.5(b) prior prison term enhancement. In his resentencing brief, appellant argued: "The question is whether . . . the court . . . should dismiss the section 12022.53 [firearm] enhancement in the interest of justice, giving [appellant] a possibility of parole and redemption during his anticipated lifetime." "Additionally, the court can and should consider whether . . . the interests of justice are truly served by re-imposing the punishment for the section 186.22, subdivision (b)(1) [gang] enhancements . . . ." Appellant alleged that he had

3

suffered "childhood trauma" that had "contributed" to the commission of the present offenses.

The People conceded the invalidity of the prior prison term enhancement. They requested that the trial court "strike the [enhancement] and [impose a new] sentence of 12 years determinate followed by 50 [years] to life."

The People opposed striking the firearm enhancement: "[Appellant] took a gun to the head of Pedro Gonzalez and blew his brains out by shooting him at close range in the face, before dumping his body in a broccoli field. He murdered Gonzalez for no other reason than a Westside Gang member, Ruben Flores, told [appellant] to kill Gonzalez for selling Flores Methamphetamine that was no good. The crime committed by defendant was nothing short of ruthless and his execution of Mr. Gonzalez deserves every day of the consecutive 25 to life sentence for killing Gonzalez with a shot to his face."

The People also opposed striking the firearm and gang enhancements because of appellant's violent conduct in prison: "[Appellant] has continued to accrue rule violations throughout his time in custody. [Record citation.] . . . [¶] On February 23, 2013, inmate Benton and [appellant engaged] in mutual combat punching [each other] and [appellant] pled guilty to the rule violation. [¶] On June 28, 2013, [appellant] was in possession of [an] inmate manufactured deadly weapon that was 5 inches in length. [Appellant was found guilty of possessing a deadly weapon.] [¶] On February 6, 2014, [appellant] and a fellow Sureno gang member attacked an inmate. The victim sustained bruising and abrasions. [¶] . . . [¶] On June 6, 2016, [appellant] was in possession of [] yet another deadly weapon. [Appellant was found guilty of possessing a deadly weapon.] [¶] On

4

September 5, 2016, [appellant] possessed two eye glass frames that had been sharpened and altered as weapons. They were approximately 5 ¼ inches in length. [Appellant was found guilty of possessing a deadly weapon.] [¶] [On] December 21, 2017, [appellant] was convicted of [violating] Penal Code section 4502, possession of a weapon in prison and received a sentence of six years in state prison consecutive to his sentence in this case."

The trial court struck the one-year prior prison term enhancement and resentenced appellant to a 12-year determinate term followed by an indeterminate term of 50 years to life. In explaining its refusal to strike the firearm and gang enhancements, the court said: "[T]he Court invokes the public safety exception [of] section 1385, which explicitly allows me to entertain an enhancement if there is public safety issues, which I think in this case are apparent. . . . [B]eing in a fight with a co-defendant in prison and then getting convicted of having a knife in prison is not things that the Court can disregard."

*Amendment of Former Section 667.5(b) and*
*Resentencing Procedure of Section 1172.75*

"'Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years. (Former § 667.5, subd. (b).) Effective January 1, 2020, Senate Bill No. 136 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 590) [("SB 136")] amended section 667.5 by limiting the prior prison term enhancement to only prior terms for sexually violent offenses. [Citations.] Enhancements based on prior prison terms served for other offenses became legally

invalid.' . . ." (*People v. Escobedo* (2023) 95 Cal.App.5th 440, 445 (*Escobedo*).)

Section 1172.75 "'establishes a mechanism to provide affected defendants a remedy for those legally invalid enhancements. . . .'" (*Escobedo, supra,* 95 Cal.App.5th at p. 445.) "'"[T]he court shall review the judgment and verify that the current judgment includes [such] a sentencing enhancement . . . ," and if so, "recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).) . . .'" (*Id.* at p. 446.)

At resentencing "[t]he court shall apply . . . any . . . changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).) "By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements." (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402.)

*The Trial Court Did Not Abuse Its Discretion in*
*Invoking the Public Safety Exception of Section 1385*

Section 1385, subdivision (c)(2) provides that, in exercising its discretion whether to dismiss an enhancement, "[p]roof of the presence of one or more [statutorily specified mitigating] circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

Here, the relevant mitigating circumstances are set forth in section 1385, subdivisions (c)(2)(B), (C), and (E): "(B) Multiple enhancements are alleged in a single case. In this instance, all

6

enhancements beyond a single enhancement shall be dismissed." "(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed." "(E) The current offense is connected to . . . childhood trauma." Despite the "shall be dismissed language," "consideration of the mitigating factors in section 1385(c)(2) is not required if the court finds that dismissal of the enhancement would endanger public safety . . . ." (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 297 (*Mendoza*).)

"[A]buse of discretion is the proper standard of review for the trial court's determination that dismissal of [appellant's] firearm [and gang] enhancement[s] would endanger public safety. [¶] The abuse of discretion standard is highly deferential. When, "'as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'"'" (*Mendoza, supra,* 88 Cal.App.5th at p. 298.) "'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.)

A trial court does not abuse its discretion ""'where [a] reasonable basis for the action is shown. . . .'"'" (*People v. Torres* (2020) 48 Cal.App.5th 550, 556.) A reasonable basis exists for the trial court's finding that dismissal of the firearm and gang

enhancements "would endanger public safety." (§ 1385, subd. (c)(2).) Appellant killed Gonzalez in an execution-style murder. In the factual summary of their resentencing brief, the People stated: "The pathologist located a single close-range gunshot wound to [Gonzalez's] head with an entry wound at the victim's left eye and an exit wound just below his skull on his right side. No other significant marks or injuries were located." The People also stated that, after the shooting, appellant had boasted, "'I smoked that fool.'" In his resentencing brief, appellant accepted the People's factual summary. Instead of summarizing the evidence, appellant said, "The court is familiar with the facts of the case, which are also summarized in the Court of Appeal's unpublished opinion and in the People's [re]sentencing brief."

In refusing to strike the enhancements, the trial court properly considered appellant's violent conduct and possession of weapons while in prison from 2013 through 2017. (See pp. 4-5, *ante*; *People v. Yanaga* (2020) 58 Cal.App.5th 619, 626-627.) In addition, in May 2011 while appellant was in the Santa Barbara County Jail, "deputies located a screwdriver approximately 3 inches in length, which had been broken and sharpened, hidden in [appellant's] anal cavity. Another inmate told deputies that the 'shank' belonged to the 'house' and [appellant] was holding it for them." This was the basis for appellant's 2012 conviction of possession of a "shank" while in custody (§ 4502, subd. (a)).

A June 2023 psychological evaluation prepared by Dr. Mary Jane Alumbaugh, a clinical psychologist, supports the trial court's finding that striking the enhancements would endanger public safety. Dr. Alumbaugh wrote: "[Appellant] will have to eventually come to terms with the early losses and early trauma that are at the core of his inability to maintain emotional

8

stability when under stress. *He, unfortunately, has yet to address these issues*. This is no small matter and *will take a significant amount of time*. He has not reached the point where he can look at his choices and understand all the forces that were at play. At this time *he does not yet have the skills to manage the emotional reactivity that can be so easily triggered. . . .* He blames his drug history for his criminal activity. The issue is far more complicated and nuanced, with long term roots which have yet to be addressed." (Italics added.)

Dr. Alumbaugh continued: "Most of [appellant's] attitudes and actions are quite straightforward criminal thinking and attitudes. He was early on socialized by the gangs into a criminal lifestyle. . . . *He may never be able to disassociate himself completely from having an identity as a gang member . . . .*" (Italics added.)

The probation report for the 2010 murder also supports the trial court's decision not to dismiss the enhancements. When the probation report was filed in October 2012, appellant was 29 years old. The report states, "Since [appellant's] first arrest in 1996, he has used violence toward others, displayed prominent gang related tattoos, and has expressed an unfailing devotion to his fellow gang members to establish his reputation with the community as a Guadalupe gang member. Despite the best efforts of the Juvenile Delinquency Court, Adult criminal Court and Probation, he has continually disregarded the law and the Court, to choose a life of crime over all else. He has been given every available assessed consequence for his illegal behavior including probation, juvenile hall detention, the Counseling and Education Center, three commitments to Tri-Counties Boot Camp/Los Prietos Boy's Camp, adult probation, county jail time,

9

and state prison as well as the opportunity to participate in rehabilitative services, all to no avail. [¶] . . . [H]e is willing to do anything . . . requested of him by fellow gang members."

The probation report sets forth appellant's juvenile and adult criminal record, which includes crimes of violence. In 2000 he was continued as a ward of the juvenile court upon a finding that he had committed misdemeanor assault in violation of section 240. The offense was described as follows: Appellant and a companion "approached the victim and asked where he was from. [The victim apparently answered that he was from Santa Maria.] [Appellant and his companion] then said, 'Fuck guys from Santa Maria' and chased the victim. [Appellant] yelled to the vehicle they had signaled earlier, 'Run that motherfucker over!' The vehicle sped up and drove straight toward the victim, who narrowly avoided being hit." Appellant later "got into an argument with the victim's mother-in-law. . . . [Appellant] brandished a knife and his companion threatened to kill the victim because he was from Santa Maria."

In 2001 appellant was convicted of a misdemeanor violation of section 273.5, subdivision (a) (inflicting corporal injury upon a spouse/cohabitant) and placed on formal probation for 36 months. In 2005 he was convicted of the same offense, only this time it was a felony. He was sentenced to state prison for the upper term of four years.

Despite the evidence showing that the trial court reasonably exercised its discretion, in his opening brief appellant advances the following theory in an attempt to show that the court abused its discretion: If the trial court had struck the enhancements, he would have remained incarcerated for years before becoming eligible for release under the 25-year-to-life

sentence for first degree murder.  Moreover, "appellant cannot reenter society without a unanimous vote of three parole commissioners and approval of the Governor."  "For these reasons, this Court must find the trial court failed to find a 'likelihood[]' . . . that striking the gang . . . and firearm use . . . enhancements would result in *future* 'physical injury or [other] serious danger to others.'  (§ 1385, subd. (c)(2) . . . .)"

After appellant had filed his opening brief, the Court of Appeal filed its opinion in *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*).  In his reply brief, appellant cites *Gonzalez* in support of the above theory that he advanced in his opening brief.  In *Gonzalez* the court concluded that, in determining whether dismissal of an enhancement would endanger public safety within the meaning of section 1385, subdivision (c)(2), the trial court is required "to consider, among other things, the date on which the defendant would be released under the revised sentence, and, in the case of an indeterminate sentence, the safety valve that exists due to the review by the Board of Parole Hearings."  (*Gonzalez, supra,* at p. 229.)  On the other hand, "a trial court is [not] permitted to delegate its judgment regarding a defendant's future threat to public safety to the Board of Parole Hearings."  (*Id.* at p. 228, fn. 10.)

The *Gonzales* court held "that based on the plain language of section 1385, subdivision (c)(2), the trial court erred because it considered only whether Gonzalez *currently* posed a danger to the public when assessing if a dismissal of the firearm enhancement would 'endanger public safety.'"  (*Gonzalez, supra,* 103 Cal.App.5th at p. 230.)  At the sentencing hearing the trial court stated: "'Isn't it [i.e., isn't the issue whether] . . . he currently at

11

the time of sentencing represent[s] a danger to society?  That's how I read the law.'"  (*Id*. at p. 223.)

If the trial court had struck the firearm enhancement, Gonzalez's sentence would have been reduced from 75 years to life to 50 years to life.  The appellate court observed, "[A] sentence of 50 years to life would result in a potential release from prison far into the future when Gonzalez is elderly . . . ." (*Gonzalez, supra,* 103 Cal.App.5th at p. 231.)

*Gonzalez* is distinguishable.  Unlike the trial court there, the trial court here did not say that its refusal to strike the enhancements was based on its finding that appellant *currently* represents a danger to society.  (See *People v. Campbell* (2023) 98 Cal.App.5th 350, 383 ["'When the record is silent as to the trial court's reasons for declining to strike a prior strike, we presume the court correctly applied the law'"]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 ["'A judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown'"].)  *Gonzalez* does not require the trial court to expressly state on the record that it "consider[ed] . . . the date on which the defendant would be released under the revised sentence, and . . . the safety valve that exists due to the review by the Board of Parole Hearings." (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 229.)

Appellant informed the trial court of "the safety valve" provided by the Board of Parole Hearings.  In his resentencing brief appellant stated, "It is noteworthy here that, even with dismissal of the enhancements, [appellant] can never reenter society without a unanimous vote of three parole commissioners and approval by the Governor."

*Gonzalez* is also distinguishable because this is not a case where, if the enhancements are dismissed, "a defendant who is currently dangerous . . . has no prospect of release from prison until he is elderly." (*Gonzalez, supra*, 103 Cal.App.5th at p. 228.) Appellant was born in January 1983. Appellant has calculated that, "due to [his] first-degree murder conviction alone, [he] is ineligible for his first parole hearing until 2037."[2] At that time, he would be 54 years old. In view of appellant's history of violent conduct and his failure to address the causes of that violence, the trial court could have reasonably concluded that appellant would endanger public safety if he were released while still in his fifties.

*We Cannot Assume the Trial Court Was Unaware*
*of Its Sentencing Discretion under Section 12022.53*

Appellant argues, "[T]he court failed to exercise informed discretion when it failed to consider that it had the authority under section 12022.53, subdivision (j), to impose a lesser enhancement under section 12022.53, subdivisions (b) [10 years] or (c) [20 years], rather than mechanically imposing the greater enhancement under section 12022.53, subdivision (d) [25 years to life]." In *People v. Tirado* (2022) 12 Cal.5th 688, 692, our Supreme Court held, "[T]he statutory framework permits a court to strike the section 12022.53(d) enhancement found true by the jury and to impose a lesser uncharged statutory enhancement instead."

The issue is forfeited because appellant failed to raise it in the trial court. (*People v. Scott* (1994) 9 Cal.4th 331, 353 ["the waiver doctrine should apply to claims involving the trial court's

---

[2] We have not verified the accuracy of appellant's calculation.

failure to properly make or articulate its discretionary sentencing choices"].)

Even if appellant had not forfeited the issue, we cannot assume the trial court failed to consider whether to strike the section 12022.53(d) enhancement and impose a lesser uncharged statutory enhancement. In its resentencing brief, the People said that, pursuant to *Tirado*, "the trial court has the discretion to impose a lesser enhancement of section 12022.53(b) or (c) instead of (d)." At the beginning of the resentencing hearing, the court said it had "reviewed all of [the] papers" submitted by the parties. In addition, the trial court is presumed to have been aware of its sentencing discretion and to have followed the applicable law. (*Biscaro v. Stern* (2010) 181 Cal.App.4th 702, 708; *People v. Mosley* (1997) 53 Cal.App.4th 489, 496.)

*Disposition*

The judgment is affirmed.
NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

14

James F. Rigali, Judge

Superior Court County of Santa Barbara

_____

Nancy Wechsler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo, Lauren N. Guber, Deputy Attorneys General, for Plaintiff and Respondent.