Filed 2/21/25  P. v. Mendez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063951 |
| v. | (Super. Ct. No. 09CF1034) |
| JOVANNY JOSUE MENDEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Michael Cassidy, Judge. Affirmed.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Laura G.

Baggett and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

*       *       *

THE COURT:*

In his third appeal, Jovanny Josue Mendez again seeks resentencing on his 2017 convictions. The People concede error occurred but assert the new error was forfeited or, alternatively, harmless. We affirm on the grounds that the court's error was harmless beyond a reasonable doubt.

FACTS

This court issued two prior opinions in this case. (*People v. Mendez* (Oct. 18, 2022, G057464) [nonpub. opn.] (*Mendez II*); *People v. Mendez* (Nov. 27, 2018, G054985) [nonpub. opn.] (*Mendez I*).)

As described in *Mendez I*, Mendez fired a gun four times into a beauty salon that was occupied at the time by approximately 12 individuals, including three or four children. (*Mendez I*, *supra*, G054985.) The shooting was motivated by a grudge borne from a previous violent encounter, which had in turn been caused by Mendez and others stealing property from the stepson of the intended victim of the shooting. (*Ibid.*)

"A jury convicted . . . Mendez of attempted premeditated murder (count 1, Pen. Code, §§ 187, subd. (a), 664, subd. (a) . . .),[1] assault with a firearm (count 2, § 245, subd. (a)(2)), shooting at an occupied building (count 3, § 246), and possession of a firearm by a felon (count 4, [former] § 12021, subd. (a)(1)[renumbered as § 29800 (Stats. 2010, ch. 711, § 6)]). The jury also found true as to count 1 a penalty enhancement allegation that Mendez

---

* Before Moore, Acting P. J., Goethals, J., and Sanchez, J.

[1] All statutory references are to the Penal Code.

2

personally discharged a firearm in committing the offense (§ 12022.53, subd. (c)) and, as to count 2, an enhancement for personal use of a firearm (§ 12022.5, subds. (a), (d)). Before trial, the court dismissed pursuant to section 995 all gang-related enhancement allegations. At sentencing, after the court struck the prior strike conviction and prior prison term allegations that Mendez admitted in bifurcated proceedings, the court imposed a life sentence with the possibility of parole, plus a consecutive 20-year determinate term. The sentence consisted of a life term on count 1, with a then-mandatory 20-year firearm enhancement, and concurrent middle terms of five years and two years, respectively, on counts 3 and 4. The court under section 654 stayed sentence on count 2 and its associated firearm enhancement." (*Mendez I*, *supra*, G054985.)

This court (though affirming the convictions in all other respects) reversed and remanded with directions to correct an error in the abstract of judgment and "for the limited purpose of allowing the trial court to exercise its sentencing discretion under amended section 12022.53, subdivision (h)." (*Mendez I*, *supra*, G054985.) The Attorney General conceded that an amendment to section 12022.53, effective January 1, 2018 (Stats. 2017, ch. 682, § 2), provided trial courts with previously unavailable discretion to strike or dismiss the pertinent 20-year firearm enhancement. (*Mendez I*, *supra*, G054985.)

On remand following *Mendez I*, the trial court declined to provide the requested relief. But in *Mendez II*, this court again reversed and remanded for a new sentencing hearing in light of subsequent statutory amendments (including a change to § 654 that gives discretion to sentencing judges to stay execution of counts with higher punishments) and new case law favorable to Mendez (that allows sentencing judges to impose alternative

3

uncharged firearm enhancements as a middle course between imposing the charged enhancement and no enhancement at all). (*Mendez II, supra,* G057464.)

On remand, Mendez's attorney argued for leniency. "[T]he fact that Mr. Mendez was offered seven years [as a plea deal before his trial] and no one was injured in this case; and all the dysfunctional family and psychological trauma he went through as a child—with the presumption of low [term for youthful offenders] and the changes in the law, I do believe this is a case that he should be resentenced" more favorably. "I think the Court can and should exercise its discretion and sentence him on either the assault or the discharging a firearm as opposed to the attempted murder. . . . He would still be doing a significant amount of time. But this is just not a life case . . . ."

The People disagreed, recommending the court "should sentence the defendant to the same sentence that he has now received on two prior occasions. The Court has at various times during the procedural history been given, either by statute or legislation, the ability to strike and change, and has previously exercised its discretion against striking the gun charge. [¶] In the People's opinion, this case was essentially a mass shooting event. . . . The fact that nobody was injured is, quite frankly, a miracle when someone fires multiple rounds into a crowded business in broad daylight in an attempt to kill somebody . . . ." The People also noted that Mendez fled prosecution in Mexico for an extended period of time, significantly delaying the resolution of this case. The People asked the court to leave questions of rehabilitation to the parole board.

4

The court initially indicated it would resentence Mendez to a determinate term of 15 years in prison, consisting of the midterm of five years on count 3 (§ 246 ["three, five, or seven years" for discharge of firearm at inhabited building]) and a 10-year gun use enhancement pursuant to section 12022.53, subdivision (b), with all other potential punishment stayed or stricken. But following a discussion off the record, the court stated: "Both counsel and I have discussed the sentence modification that I intended to do this morning, and it may not be legally valid. So both counsel have agreed to continue the sentencing . . . ."

On the later date, the court resentenced Mendez to a determinate term of 14 years in prison. The court first considered Mendez's age at the time of the offense (he was 21 years old) and his prior childhood trauma. The court took these factors "into account" in reaching its overall sentence.

The sentence consisted of the upper term of four years on count 2 (§ 245, subd. (a)(2) [assault with a firearm punishable by "two, three, or four years"]) and an upper term of 10 years for the personal use of a firearm enhancement attached to count 2 (§§ 12022.5, subd. (a) ["3, 4, or 10" year enhancement], 12022.5, subd. (d) [specifically authorizing this enhancement for a § 245 conviction, even if it involves the use of a gun as an element of the offense]).

The court imposed seven years to life for count 1, attempted murder, but stayed execution of sentence pursuant to section 654. The court struck the count 1 enhancement under section 12022.53, subdivision (c). (§ 1385, subd. (c).) The court acknowledged a prior strike had already been dismissed and also dismissed the section 667.5, subdivision (b) enhancement, based on changes to that law. (Stats. 2021, ch. 626, § 28.)

5

The court imposed the upper term of 7 years on count 3 (shooting at an occupied building) but stayed execution of sentence pursuant to section 654.[2] Finally, the court imposed the upper term of three years on count 4 (possession of a firearm by a felon) but also stayed execution of sentence pursuant to section 654.

The upper term sentences were based on the sentencing judge's consideration of "all of the factors in aggravation, namely that the crime involved great violence, the defendant was armed with a weapon at the time, [and] the conduct indicates a serious danger to society."

DISCUSSION

Mendez contends the court erred by imposing upper term sentences, based on an improper consideration of factors not admitted by Mendez or not found to be true beyond a reasonable doubt by a jury (or by a judge upon waiver of the right to a jury trial on such findings).

---

[2] According to *Mendez I*, section 654 should not have been applied to count 3. "[I]t is well-established that section 654 does not apply to shooting at an occupied building . . . when the offense involves one or more additional victims beyond the attempted murder or assault victim." (*Mendez I, supra*, G054985.) The court minutes indicate that this sentence would be consecutive absent the section 654 stay, but the court did not actually specify whether the sentence would be consecutive or concurrent at the hearing (nor does the abstract of judgment indicate consecutive or concurrent for this hypothetical punishment). Neither party objected below or raises this error in their briefs. Presumably, given the context, the court would have run the sentence on count 3 concurrently if the court believed execution of sentence on count 3 could not be stayed, in light of its balanced approach to sentencing Mendez.

6

Since January 1, 2022, selection of the upper term at sentencing is disfavored by the Penal Code. "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170, subd. (b)(1).)

"The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2); see Cal. Rules of Court, rule 4.420(a).) "Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

Relatedly, in a line of cases beginning with *Apprendi v. New Jersey* (2000) 530 U.S. 466 and culminating (for now) with *Erlinger v. United States* (2024) 602 U.S. 821, the United States Supreme Court prohibited courts from increasing criminal punishment based on findings not made by a jury (or, if a jury was waived, by the court as a factfinder), other than the bare fact of a prior criminal conviction.

In the respondent's brief, the People concede error: "[R]espondent agrees that the trial court erred by imposing the upper terms without the jury having found true or appellant admitting the aggravating circumstances on which they were based."

We agree with the People's concession. (See *People v. Lynch* (2024) 16 Cal.5th 730, 742–743 [reversing for a new sentencing hearing under amended § 1170] (*Lynch*).) The court erred by imposing upper terms based on aggravating factors other than prior convictions, i.e., the "great violence" of the shooting and the extreme danger to society posed by Mendez, as illustrated by his conduct, i.e., firing at least four times into the beauty salon occupied by about 12 people. (See Cal. Rules of Court, rule 4.421(a)(1) ["The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness"], *id*., rule 4.421(b)(1) ["The defendant has engaged in violent conduct that indicates a serious danger to society"].)

Notwithstanding the concession of error, the People seek affirmance.

First, they claim any error has been forfeited. Statutory jury trial rights may be forfeited, but constitutional jury trial rights can only be expressly waived. (*People v. French* (2008) 43 Cal.4th 36, 46–48.) The People cite *People v. Anderson* (2023) 88 Cal.App.5th 233, 242, in support of their argument that Mendez forfeited his rights. But in *Anderson*, "not only did [the defendant] fail to object to the court's imposition of the upper term, but also it was [the defendant's] counsel who repeatedly suggested the court sentence [the defendant] to the upper term on count 3" to facilitate an overall sentence reduction. (*Ibid*.) Here, though it is possible Mendez's sentencing counsel made a tactical decision to remain silent about this issue due to overall favorability of the sentence reduction, nothing in the record indicates Mendez's counsel advocated for imposition of an upper term sentence. Without parsing the question of whether *Anderson* was a waiver case rather than a forfeiture case (or, indeed, whether *Anderson* was correctly decided),

8

we decline to find forfeiture with regard to raising an objection that a jury was required to find the aggravating sentencing factors beyond a reasonable doubt. (See *People v. Gonzalez* (2024) 107 Cal.App.5th 312, 327–328 [disagreeing with *Anderson* and forfeiture contention because a constitutional jury trial right was at issue].)[3]

Second, the People assert the error was harmless beyond a reasonable doubt. (See *Lynch, supra,* 16 Cal.5th at pp. 742–743, 768 [establishing harmless error standard in this circumstance; stricter standard applies because the error pertains to the constitutional right to a jury trial].) An appellant is entitled to resentencing if the reviewing court cannot determine "that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements." (*Id.* at p. 768.)

We are convinced that a jury would have found beyond a reasonable doubt that Mendez's "crime[s] involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Cal. Rules of Court, rule

---

[3] If the court intended to rely on Mendez's use of a gun as an aggravating factor at sentencing (Cal. Rules of Court, rule 4.421(a)(2) ["The defendant was armed with or used a weapon at the time of the commission of the crime"]), that was error (*id.*, rule 4.420(h) ["A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term"]). Both parties agree on this point, though appellant's opening brief does not treat this issue as an independent ground to reverse. But no objection was made at sentencing on this point so this issue (which does not pertain to a constitutional jury trial right) was forfeited. (*People v. Scott* (1994) 9 Cal.4th 331, 351–354; *id.* at p. 353 ["defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention"].)

4.421(a)(1); see CALCRIM No. 3224 [jury instruction for this aggravating factor].) "*Threat of great bodily harm* means the threat of significant or substantial physical injury. It is a threatened injury that would result in greater than minor or moderate harm." (CALCRIM No. 3224.) "*Viciousness* means dangerously aggressive or marked by violence or ferocity." (*Ibid.*) "An act discloses *callousness* when it demonstrates a lack of sympathy for the suffering of, or harm to, the victim[s]." (*Ibid.*) This aggravating factor may only be found true if "the defendant's conduct was distinctively worse than an ordinary commission of the underlying crime." (*Ibid.*)

When tasked with applying the beyond a reasonable doubt standard, the jury actually found Mendez guilty of attempted premeditated murder. The jury actually found Mendez personally discharged a firearm. The jury actually convicted Mendez of firing into an occupied building. Only one shot was required for the various felonies at issue; the undisputed evidence demonstrates that Mendez fired at least four times. The undisputed facts show the building was occupied by approximately 12 people, including several children, far beyond the number of victims (one) required for these convictions. Mendez's conduct was distinctively worse than a run-of-the-mill assault with a firearm, shooting into an occupied building, or possession of a firearm. It was attempted murder with a dozen bystanders near the target of the attempted murder.

For the same reasons cited above, we are also convinced that a jury would have found beyond a reasonable doubt that Mendez "has engaged in violent conduct that indicates a serious danger to society." (Cal. Rules of Court, rule 4.421(b)(1); see CALCRIM No. 3234 [jury instruction for this aggravating factor, requiring proof that the defendant "engaged in violent conduct that shows (he/she) is a serious danger to society" and that the

10

"violent conduct was distinctively worse than that posed by an ordinary commission of the underlying crime and that the violent conduct, considered in light of all the evidence presented . . . shows that the defendant is a serious danger to society"].)

The court agreed with Mendez that, in light of recent criminal justice reforms and a review of all of the circumstances, the appropriate sentence was not 20 years to life in prison. At the same time, in its initial selection of 15 years in prison and in its ultimate selection of 14 years in prison, the court expressed its view that a substantial sentence was warranted rather than the minimum possible sentence, i.e., both staying the attempted murder count and imposing low terms on the remaining counts and enhancements. Ideally, the court would have put together a sentence comporting with every single sentencing reform put into place in recent years. Ideally, as they did with regard to the initial 15-year determinate sentence on this sentencing remand, counsel would have warned the court about the error that occurred with regard to the 14-year determinate sentence currently on appeal. But an ideal sentencing hearing is not required. The sentencing errors by the court were harmless beyond a reasonable doubt because the record "clearly indicate[s]" that the trial court would have imposed the same sentence had it been considering the amended version of section 1170, subdivision (b). (*Lynch*, *supra*, 16 Cal.5th at pp. 772–773.)

In light of our conclusions with regard to forfeiture and harmless error, Mendez's alternate theory that his attorney at the sentencing hearing provided ineffective assistance of counsel falls flat. Counsel did not forfeit the issue raised on appeal. The record is insufficient to assess whether counsel made tactical decisions in declining to raise all possible objections to the

11

court's pronouncement of sentence. And Mendez was not prejudiced by errors that occurred at sentencing.

## DISPOSITION

The judgment, including the 14-year determinate sentence imposed, is affirmed in its entirety.