Filed 8/22/25  P. v. Bevis CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D084410 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE411428) |
| JESSE ALAN BEVIS, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Daniel G. Lamborn, Judge.  Affirmed in part, reversed in part, and remanded with instructions.

Mark A. Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jesse Alan Bevis on one count of sexual penetration of his stepdaughter (Pen. Code,[1] § 288.7, subd. (b)), and five counts of committing forcible lewd acts upon her (§ 288, subd. (b)(1)). On appeal, he argues that two of the section 288 counts are not supported by substantial evidence. We conclude that substantial evidence supports the jury's verdict on these counts. Bevis also argues the court improperly imposed a condition barring him from writing letters to his victim's family. We agree the trial court did not have the authority to impose this condition as issued, but we conclude it could be modified to comply with section 1201.3. We therefore strike the letter-writing condition from the judgment and remand with instructions to consider whether to impose a new order that complies with the statute. We otherwise affirm the judgment.

## BACKGROUND

Bevis became J.M.'s stepfather when J.M. was five years old. Approximately two years later, Bevis began sexually abusing her. The abuse continued for two years, through March 2022.

After a trial held in 2024, when J.M. was nearly eleven years old, the jury convicted Bevis on one count of sexual penetration of J.M. (count 1; § 288.7, subd. (b)), and five counts of committing forcible lewd acts upon her (counts 2 through 6; § 288, subd. (b)(1)). Because Bevis only appeals his convictions on two counts of violating section 288, we only discuss the evidence relevant to those two counts.

Count 2 was premised on an incident that occurred in the living room of J.M. and Bevis's shared home. In a 2022 forensic interview, portions of which were admitted at trial, J.M. stated that Bevis was "randomly touching" her while they were watching a movie on the couch. She described Bevis

---

[1] Undesignated statutory references are to the Penal Code.

"squeezing" her "bottom, [her] private, and [her] chest," and asking if "it felt good." She said he would "put his hand inside of [her] shirt or [her] pants and then just touch [her]."

When discussing this incident at trial, J.M. testified, "I was leaning against [Bevis]. And he started like touching me where I didn't want him to. Like, he tried going through my chest and my front private part." When asked what she meant by "he tried," she explained, "I was like pushing his hand away. And he kept on like trying and trying and trying to touch me where I didn't want him to on my chest." Later in her testimony, J.M. said she did not remember that incident or other incidents she had previously described.

The conduct underlying Count 3 was an incident in which J.M. testified she was sitting on Bevis's lap and, "he wasn't doing anything bad, but he was like touching" the outside of her thigh. She remembered then following Bevis into his room and laying on the bed with a blanket over both of them. At trial, J.M. testified there was more touching that day, but she could not remember what. In what may have been the same incident, she also testified Bevis had grabbed her wrists to prevent her from getting off the bed. In her forensic interview, J.M. said that Bevis touched her "whenever" they went into his room. They would lie down on his bed and he would put his hand on her "private" and her "bum" and "just keep[] touching [her]."

The other evidence adduced at trial included a letter from Bevis to J.M.'s mother in which he said he had developed feelings for J.M. and wanted the mother's approval to marry her. In his letter, Bevis said he had touched J.M. at least a dozen times. In a later letter to J.M.'s mother, he said he "included hand-holding and touching or resting my hand, on arms, legs, back, neck, and stomach" in the dozen incidents mentioned in his first letter,

3

adding "it was all inappropriate because I needed more time/love than you could give, and I should have been with you instead." In a third letter, Bevis said, "I prayed three times to god to finally be okay and myself again. To stop needing to spend so much time with [J.M.] To stop feeling as though I had to touch [her] because she seemed to like it and never said no or stop, or else she wouldn't want to spend time with me and to stop touching her."

## DISCUSSION

### A. *Substantial Evidence*

#### 1. *Standard of Review*

When assessing the sufficiency of the evidence to support a conviction, we must determine whether the record contains enough "evidence that is reasonable, credible, and of solid value" that a rational jury could find the defendant guilty beyond a reasonable doubt. (*People v. Zaragoza* (2016) 1 Cal.5th 21, 44.) We review the record in the light most favorable to the judgment, which includes inferring every fact reasonably supported by the evidence. (*Ibid.*) Thus, even if the evidence of guilt is largely circumstantial, a reviewing court's role is not to assess credibility or resolve evidentiary conflicts. (*Ibid.*) If any rational finder of fact could have found the defendant guilty, the conviction must be affirmed. (*Ibid.*)

#### 2. *Count 2*

A defendant is guilty of violating section 288, subdivision (b)(1), if he "willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child," and does so "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." "[S]ection 288 is violated by 'any

4

touching' of an underage child committed with the intent to sexually arouse either the defendant or the child." (*People v. Martinez* (1995) 11 Cal.4th 434, 442 (*Martinez*).)

Bevis argues "the record lacks solid credible evidence that the conduct alleged in count two amounted to anything more than an attempt." He suggests that, because J.M. testified he "tried" to touch her, and at times said she could not recall the incident, there was insufficient evidence for the jury to conclude that he in fact committed a lewd touching. J.M. was still a young child at the time of trial, and her trial testimony was somewhat ambiguous. Although she did testify that Bevis "tried" to touch her on this occasion, she also testified that "he started like touching me where I didn't want him to." According to J.M., he put his hand underneath her pants and underwear where her "private part" was in the front. She tried pushing his hand away, but he was stronger than her. Moreover, her trial testimony was not the only evidence about this incident. In her forensic interview, J.M. said that Bevis put his hand under her clothes, "squeez[ed]" her "bottom, [her] private, and [her] chest," and asked if "it felt good." Bevis does not argue this evidence was inadmissible. The jury could reasonably conclude that J.M.'s statements during the forensic interview, which was closer in time to the abuse than trial, provided a more accurate description of the incident. The record supports the conviction on this count.[2]

---

[2]    Bevis argues for the first time in his reply brief that "[t]he fact [he] may have harbored sexual intent on one or more occasions does not amount to sol[i]d, credible evidence of his intent during the living room incident." Even if this argument had not been forfeited, evidence that Bevis squeezed J.M.'s vagina, buttocks, and chest while asking her if "it felt good" adequately supports a finding of specific intent. (See *Martinez, supra*, 11 Cal.4th at p. 442.)

### 3. *Count 3*

Bevis argues there is no "solid credible evidence that the conduct relating to count three was committed with the required sexual intent." Factors relevant to a defendant's intent "can include the defendant's extrajudicial statements [citation], other acts of lewd conduct admitted or charged in the case [citations], the relationship of the parties [citation], and any coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection [citation]." (*Martinez, supra*, 11 Cal.4th at p. 445.)

Although the parties focus their arguments on what occurred in the bedroom,[3] they agree that the conduct underlying count 3 included Bevis touching J.M.'s thigh while she was sitting on his lap. Although this conduct is not intrinsically lewd, the context of Bevis's actions and the nature of the touching itself supports a reasonable inference of sexual intent sufficient to support the conviction. Evidence presented at trial showed that Bevis had a romantic interest in J.M., telling his wife that he wanted to marry J.M. and had been touching her "inappropriate[ly]," by which he meant in a manner he should have been touching his wife. Bevis also does not dispute there was sufficient evidence to support multiple other counts of lewd touching and one count of sexual penetration of J.M. (See, e.g., *People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1380 [rubbing victim's stomach, back, and thigh supported violation of section 288 in light of his "pattern of conduct with [victim] as well as with other young girls"].) Contrary to Bevis's argument, the jury did not have to find he "harbored lewd intent every time he touched" J.M. to convict

---

3    Although count 3 was charged as an act occurring "one time in defendant's bedroom," Bevis argued to the court and again to the jury that this count included the thigh touching in the living room. He continues to argue on appeal that the count includes this conduct.

him on this count. Touching J.M.'s thigh while she sat on his lap is an intimate act especially susceptible to an inference of sexual intent.

Furthermore, J.M. testified there was more touching after they went into Bevis's room and lay down on his bed under the blanket, but she could not remember at trial what additional touching occurred there. In her forensic interview, J.M. said that Bevis touched her "whenever" they went into his room. As she described it, they would lie down on his bed and he would put his hand on her "private" and her "bum" and "just keep[] touching [her]." The jury could reasonably conclude that this type of lewd touching occurred in Bevis's room in connection with count three. The evidence is sufficient to support the jury's verdict on this count as well.

## B.    *Letter-Writing Condition*

At the end of the sentencing hearing, the prosecutor asked "that [Bevis] be ordered to stop writing letters to any [of J.M.'s] family members." Without asking for defense counsel's response, the court ordered Bevis "not to continue to write letters to members of the immediate family of" J.M. Bevis did not object.

Bevis argues the trial court did not have the authority to impose this condition. He claims his failure to object should be excused because this constitutes an unauthorized sentence that can be challenged at any time. We agree the condition as imposed by the trial court is not authorized, but we will remand for the limited purpose of permitting the court to consider issuing a new order that complies with section 1201.3.

" 'A claim that a sentence is unauthorized . . . may be raised for the first time on appeal, and is subject to judicial correction whenever the error comes to the attention of the reviewing court.' " (*People v. Robertson* (2012) 208 Cal.App.4th 965, 995, quoting *People v. Dotson* (1997) 16 Cal.4th 547, 554,

fn. 6.) " '[A] sentence is generally "unauthorized" where it could not lawfully be imposed under any circumstance in the particular case.' " (*People v. Robertson*, at p. 996, quoting *People v. Scott* (1994) 9 Cal.4th 331, 354.)

The People argue the trial court had the authority to impose the letter-writing condition under section 1201.3, subdivision (a), which provides: "Upon the conviction of a defendant for a sexual offense involving a minor victim or, in the case of a minor appearing in juvenile court, if a petition is admitted or sustained for a sexual offense involving a minor victim, the court is authorized to issue orders that would prohibit the defendant or juvenile, for a period up to 10 years, from harassing, intimidating, or threatening the victim or the victim's family members or spouse." The condition imposed on Bevis, however, does not prevent just "harassing, intimidating, or threatening" letters, but any letters. In addition, although section 1201.3 only authorizes such a condition for "a period up to 10 years," the condition in Bevis's case applies indefinitely. The terms of the condition are thus not authorized by section 1201.3.

Furthermore, for an order to be issued under section 1201.3 "[n]otice of the intent to request an order . . . *shall* be given to counsel for the defendant . . . by the prosecutor or the court at the time of conviction, . . . and counsel *shall* have adequate time in which to respond to the request before the order is made." (§ 1201.3, subd. (c), italics added.) Bevis was not given notice of the prosecutor's intent to request an order at the time of conviction and was not given any time to respond before the court issued its order.

The People also argue that the trial court had inherent authority to impose this condition under California Rules of Court, rule 4.410(a), which provides that the "[g]eneral objectives of sentencing include" "[p]rotecting society;" "[p]unishing the defendant;" "[e]ncouraging the defendant to lead a

8

law-abiding life in the future and deterring him or her from future offenses;" and "[p]reventing the defendant from committing new crimes by isolating him or her for the period of incarceration." But nothing in this rule speaks to a trial court's authority to craft additional sentencing conditions, and we cannot agree that the court has inherent authority to issue an order that contravenes the explicit procedural and substantive limitations of section 1201.3. (See, e.g., *Estrada v. Royalty Carpet Mills, Inc.* (2024) 15 Cal.5th 582, 598 ["[W]here the Legislature has provided for certain procedures in one context, courts generally lack inherent authority to apply the procedure in an inapposite context."]; *Ferguson v. Keays* (1971) 4 Cal.3d 649, 654 [a court's "inherent powers should never be exercised in such a manner as to nullify existing legislation or frustrate legitimate legislative policy"].)

We find that the letter-writing condition is unauthorized as issued. However, the condition could be made compliant with section 1201.3 if the trial court gave Bevis notice and adequate time to respond, specified a duration of 10 years or fewer, and limited it to prohibit "harassing, intimidating, or threatening" communications. We will therefore remand for the limited purpose of allowing the trial court to consider whether to issue an order in compliance with section 1201.3 after proper notice to Bevis.

## DISPOSITION

The letter-writing condition is stricken, and the matter is remanded to the trial court for the limited purpose of determining whether to issue a new order in compliance with section 1201.3 after giving Bevis notice and adequate time to respond.  The judgment is otherwise affirmed.


                                                        BUCHANAN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


CASTILLO, J.